Schermerhorn *v.* Merrill.

WASHINGTON SPECIAL TERM, September, 1847. ·
*Hand*, Justice.

SCHERMERHORN and wife *vs.* MERRILL and WILCOX.

A defendant cannot move to dissolve an injunction on account of want of due diligence on the part of the plaintiff in prosecuting the suit, except in cases where the defendant cannot himself expedite the cause. Where the situation of the cause is such, that the defendant may proceed therein without waiting for the plaintiff, the plaintiff's inactivity is no cause for dissolving the injunction.

An injunction, properly allowed in the first instance, will not be dissolved on the coming in of the answer, in the absence of any laches on the part of the plaintiff, unless the defendants, in their answer, have positively denied all the equity of the bill under oath.

And where the bill charges fraud, it is not sufficient that some of the defendants have denied all fraud as to themselves, if their title or rights may be affected by the fraud charged against the other defendants. If the act charged as fraudulent forms one link in their title, and is charged to have been done by another, through whom they hold, and under circumstances which preclude them from the benefit of the position of bona fide holders without notice, it is not sufficient that they deny all fraud on their part.

But where the answer of a defendant answering under oath, from his own knowledge, denies the whole equity of the bill, and makes a clear title in himself, in such a way that it cannot, if the answer be true, be affected by the fraud charged in the bill and not denied, his case is severed from that of his co-defendants, and stands upon its own merits.

Schermerhorn *v.* Merrill.

Where the plaintiff waives an answer on oath from all the defendants, and one of them answers on oath, denying the whole equity of the bill, he may move to dissolve the injunction, upon his answer, notwithstanding his co-defendant has put in an answer without oath.

The right and title of a judgment debtor to real estate belonging to him which has been sold by the sheriff upon execution, is not divested, by the sale, until the expiration of the fifteen months allowed for redeeming.

And the deed given by the sheriff to the purchaser at a sale upon an execution will not relate back, so as to give to the purchaser a legal estate which will merge a mortgage previously given to him by the judgment debtor, upon the land sold.

Even after the time for redemption has expired, the naked legal estate continues in the judgment debtor. And the purchaser's interest, before deed, is but a lien, or a conditional right.

The doctrine of merger applies only where there is a legal estate; as where the title and a lien, or a legal and an equitable, or a larger and a lesser, estate meet.

In Equity. This was a motion by the defendant Merrill, to dissolve an injunction restraining him from foreclosing a mortgage on certain land in Salem, Washington county. Elam Phillips, on the 1st of March, 1842, held the land in question by perpetual lease, subject, with other lands, to an annual rent of $280, and on that day he and his wife executed a bond and mortgage thereon to Eli Ames, to secure $459,60, payable at the expiration of two years, with annual interest; which mortgage was duly recorded on the 8th of March, 1842. The defendant Merrill, in his answer, states his belief that this was given to secure the purchase money. Proudfit & Fitch recovered a judgment against Phillips for about $188, which was docketed on the 30th of March, 1842. The land was sold to satisfy this judgment on the 14th of March, 1844, and bid off by Ames for $100. He received the usual certificate of sale, a duplicate of which was also filed. Merrill states that he is informed and believes that Ames, at the time of this sale, was assignee of this judgment. On the 11th of January, 1845, Ames assigned the bond and mortgage and certificate of sale to the defendant Wilcox; $550 being the consideration expressed in the assignment of the mortgage. The plaintiff alleged that he believed the consideration was only paid for the certificate, and that in truth no consideration was paid for the mortgage, and that Ames considered it merged and satisfied by his purchase.

Schermerhorn *v.* Merrill.

of the land at the sheriff's sale. On the 24th of May, 1845, Wilcox and the defendant Merrill settled, and Wilcox was found indebted to Merrill in the sum of $250. On the same day Wilcox bought and received from Merrill, a horse for $100, and at the same time assigned the bond and mortgage to Merrill as collateral security for the payment of the $350 and interest thereon on the 1st day of March, 1846, and if that sum was not then paid the assignment was to be absolute; and it was agreed that Merrill might collect the money and pay the surplus, if any, over and above the $350 and interest and costs, to Wilcox. Wilcox stated to Merrill, when he took the assignment of the mortgage, that it was a valid lien upon the land, which was good security for $500 or $600; all which Merrill stated he believed. Merrill denied all fraud or concealment. On the 24th of June, 1846, Merrill commenced proceedings for a statute foreclosure, which were stopped by the injunction in this cause, now sought to be dissolved. The plaintiff alleged that on the 14th of November, 1845, he and his wife executed to Wilcox an agreement to convey to Wilcox certain Virginia lands, for which they were to receive a deed of this land in Salem, free of all incumbrances except the rent. That after the contract was delivered, Wilcox proposed they should take an assignment of the sheriff's certificate, which they did, and he assured them that the mortgage was not a lien upon the premises, and that he had left it in Saratoga, but would get it and cancel it, or assign it to them as they should prefer, which he had failed to do, though he had at three several times, since, renewed his promise to do so. The plaintiff took possession of the property on the 1st of April, 1846, in pursuance of his agreement with Wilcox, and with his consent, and on the 12th of August, 1846, received a deed from the sheriff, by virtue of the assignment of the sheriff's certificate to him. Merrill answered under oath, and Wilcox not under oath. The cause was at issue as to both defendants, on the 5th of February, 1847.

*H. W. Merrill,* in person, and *C. F. Ingalls,* for the motion.

*C. L. Allen,* for the plaintiffs.

Schermerhorn v. Merrill.

HAND, J. Each party claims the benefit of a rule of practice. The defendant contends that the plaintiff has neglected to expedite the suit since the cause was at issue. Want of diligence is often ground for dissolving an injunction. (*Higgins* v. *Woodward, Hopk. Rep.* 342. *Depeyster* v. *Graves,* 2 *John. Ch. Rep,* 148. *Grey* v. *Duke of Northumberland,* 17 *Ves.* 281. 3 *Dan. Prac.* 1896. 1 *Hoff. Prac.* 360. *Seebor* v. *Hess,* 5 *Paige,* 85. *Waffle* v. *Vanderheyden,* 8 *Id.* 46. *Ward* v. *Van Bokkelen,* 1 *Id.* 100.) But these are cases where the defendant could not move on the cause; and in such cases, as where the plaintiff neglects to bring in proper parties or bring to trial an issue at law awarded in an equity case, this rule applies. But where the situation of the cause enables the defendant to proceed, the reason of the rule does not exist, nor, consequently, the rule itself. On the other hand, the plaintiff insists that Merrill cannot move to dissolve the injunction until all the defendants have denied the equity of the bill under oath, which the defendant Wilcox has not done in this case. That from the nature of this case, Merrill has not denied, and cannot deny, the whole equity of the bill. The whole equity of the bill must be positively denied under oath, before the injunction will be dissolved, where it was properly allowed in the first instance, and the plaintiff is not chargeable with laches. (*Ward* v. *Van Bokkelen,* 1 *Paige,* 100. *Fulton Bank* v. *New-York and Sharon Canal Co.* 3 *Id.* 312. *Wakeman* v. *Gillespy,* 5 *Id.* 112. *Roberts* v. *Anderson,* 2 *John. Ch. Rep.* 202. *Manchester* v. *Dey,* 6 *Paige,* 296. *Hollister* v. *Barkley,* 9 *N. Hamp. Rep.* 230.) And where the bill charges fraud, it is not sufficient that some of the defendants deny all fraud as to themselves, if their title or rights may be affected by the fraud charged against the other defendants. If the act charged as fraudulent forms one link in their title, and is charged to have been done by another, through whom they hold, and under circumstances that preclude them from the benefit of the position of bona fide holders without notice, it is not sufficient that they deny all fraud on their part.(a)

(a) See *Mallett* v. *The Weybossett Bank and others,* ante, 217.

Schermerhorn *v.* Merrill.

.Such was the case of *Roberts* v. *Anderson*, (2 *John. Ch. Rep.* 202.) There all parties claimed title from a common source. The defendants were honest enough, and swore they believed those from whom they derived title were; but this was held not sufficient. The answer might be true as to those parts stated upon their own knowledge, and yet their title be wholly tainted with fraud. But where the answer of a defendant answering under oath, from his own knowledge, denies the whole equity of the bill, and makes a clear title in himself in such a way that it cannot, if the answer be true, be affected by the fraud charged in the bill and not denied, his case is severed from that of his co-defendants, and is perfect; and he stands upon his own merits. How far the express admission of the fraud in the sworn answer of a co-defendant would affect a motion to dissolve an injunction, is a question which does not arise in this case. If the plaintiff waives an answer upon oath from all the defendants, and one of them answers on oath, denying the whole equity of the bill, he may move to dissolve the injunction, upon his answer, notwithstanding his co-defendant has put in an answer without oath. If the rule were otherwise, a complainant, by waiving a sworn answer, would put it out of the power of a defendant to procure the dissolution of an injunction on bill and answer, although all the equity of the bill was denied by his answer.

The defendant Merrill, in this case, has denied the whole equity of the bill on his part, unless the mortgage was merged; which is the principal question in the case. Wilcox, on the 24th day of May, 1845, held both the certificate and the mortgage. The holder of the certificate (if no redemption should be made,) would be entitled to a sheriff's deed on the 15th day of June, 1845. As the assignment to Merrill was made nearly ten months before the plaintiffs had any concern with the property, it is of no importance whether the consideration of the assignment was a pre-existing debt or not; and the plaintiffs, if they succeed, must do so because the mortgage was no longer a valid lien. I cannot think that leaving the certificate in the hands of Wilcox, operates against Merrill, on the ground that

he thereby put it in the power of Wilcox to defraud some one, and therefore must, of two innocent persons, be the sufferer. In the view I take of this case, the certificate was very properly left with Wilcox. Ames, about ten months after he bid off the premises, assigned the mortgage to Wilcox for the sum of $550, as expressed in the assignment, and I do not find that the plaintiff is in a condition to insist that this was a fictitious consideration. At this time, all parties treated the mortgage as valid and subsisting. Between three and four months afterwards, Wilcox and Merrill treated it in the same way. An assignment of the certificate accompanied the assignment to Wilcox, but these instruments were separated in the *subsequent* transaction between the defendants, which the plaintiffs contend could not legally be done. But I have not been able to concur in that view. Had the legal title to the land been in Ames, and afterwards in Wilcox, this case could not be distinguished from that of *James* v. *Morey*, (2 *Cowen*, 246.) And see *Skeel* v. *Spraker*, (8 *Paige*, 182;) *Millspaugh* v. *McBride*, (7 *Id.* 509;) *Russell* v. *Austin*, (1 *Id.* 195;) *McKinstry* v. *Mervin*, (3 *John. Ch. Rep.* 446.) In *James* v. *Morey*, the equity of redemption in part of the land was in Wattles $6\frac{1}{2}$ months, and he declared his legal title good, and offered to convey, but afterwards assigned his mortgage, and then mortgaged, in the form of a conveyance, the premises, to a person ignorant of the assignment of the mortgage. In some of the opinions delivered in the court of errors in that case, Morey was blamed for not inquiring respecting the mortgage. Here, inquiry was made, and answers calculated to awaken the suspicions of a purchaser, reasonably vigilant, were given. In that case the mortgagee assigned the mortgage to secure a pre-existing debt. In this, a portion of the consideration was the same, and the remainder was for property sold to and received by the assignor, from the assignee, at the time of the assignment. Had the equity of redemption been in Wilcox, the case would have been nearly parallel in all respects with that of *James* v. *Morey*, and the distinctive characteristics, where they exist, are the most favorable to the assignee in this case. That case was well considered, and has never been

Schermerhorn *v.* Merrill.

shaken; and it would be a work of supererogation to bring to its aid other authorities.

But I have not been able to discover the application of the law of merger to this case. At the time Wilcox assigned the mortgage to Merrill, the legal estate was in Phillips. The statute is decisive on this point. It declares that "the right and title of the person against whom the execution was issued, to any real estate which shall be sold thereby, shall not be divested by such sale until the expiration of 15 months from the time of said sale." (2 *R. S.* 373, § 61.) It is true, after a deed is given, it has a retroactive effect as far as respects the punishment of those who have injured the property after the sale, but for no other purpose. The action of waste is given in such cases. (2 *R. S.* 336, § 20.) Waste may be stayed before the deed. (*Idem*, 337, § 23.) But the sheriff's deed does not relate back, so as to give a legal estate that will merge a mortgage which the purchaser may have assigned, while the legal estate was in the debtor. If this were so, it might in this case work injury to the purchaser, by letting in a claim for dower, and perhaps liens intermediate the mortgage and judgment. The *judgment* is a lien until a sale; then *that* is extinguished, and the purchaser has a lien *by virtue of the sale*, until the expiration of the 15 months that must elapse before the deed can be given. Up to that time the debtor has the right to the undisturbed use and possession of the land, (2 *Wend.* 507,) unless proceeded against in chancery; and there it is treated as real estate. (10 *Paige*, 598.) He may redeem during the year, and during the three months thereafter, confess a judgment or give a mortgage by which the purchaser may have the land redeemed from him. The purchaser may also accept his money up to the last moment, (and perhaps after the 15 months;) and this too from a stranger. And such payment and acceptance alone, releases his interest, which is wholly incompatible with the notion of a legal estate. (15 *Wend.* 248.) It has been held that a conveyance by the sheriff to another, in pursuance of the purchaser's parol assent, carries the title. (1 *Wend.* 46.) Even after the time for redemption has expired, the naked

legal estate continues in the debtor. (5 *Cowen*, 164.) The purchaser's interest, before deed, is but a lien. (7 *Cowen*, 554, 660. 20 *John. Rep.* 3. 2 *Wend.* 507, 570. 4 *Cowen*, 133. 1 *Denio*, 634. 5 *Cowen*, 164.) It is difficult to understand how one lien can merge in another. The doctrine of merger has been supposed to apply only where there was a legal estate; as where the title and a lien, or a legal and an equitable, or a larger and a lesser estate, meet. The interest of the purchaser has been called a "conditional right." (*Per Woodworth Justice, in Jackson* v. *Budd*, 7 *Cowen*, 660.) It may be similar to the right under a tax deed of occupied lands, before notice, which Cowen, Justice, thought analogous to a mortgage. (*Bush* v. *Davison*, 16 *Wend.* 556.) Perhaps the remedies on the mortgage in this case, are now confined to the land. (*Tice* v. *Annin*, 2 *John. Ch. Rep.* 128. *Russell* v. *Allen*, 10 *Paige*, 255.) But that does not affect this question.

In this case, there being no merger, the equity of the defendant Merrill has priority in time, and, as it does not appear that Wilcox made any written agreement, or that the plaintiff has paid any part of the consideration, Merrill has also the better equity, to the extent of his claim, at least. (*Berry* v. *Mutual Insurance Co.* 2 *John. Ch. Rep.* 603. *Grimstone* v. *Carter*, 3 *Paige*, 436. *And see* 3 *Sugden on Vendors*, 80, 418, *note* 1, 6*th Am. ed.* 1 *Fonb.* 321, 350. *Muir* v. *Schenck*, 3 *Hill*, 228.) Although the plaintiffs may now have the legal title, they have no such equity as will overreach the lien of Merrill. The injunction must be dissolved as to Merrill, so far as to allow him to foreclose the mortgage, and retain out of the proceeds of the sale, $350 and interest thereon from the 24th day of May, 1845, and also the costs of foreclosure. The balance, if any, of said proceeds, he must bring into court to be subject to its further direction; unless the plaintiffs, within 20 days after notice of this order, shall bring into court for the use of Merrill, the said sum of $350 and interest thereon from the 24th day of May, 1845, and also the costs of the foreclosure already incurred; in which case the injunction is to be retained. If the plaintiffs bring the money into court, they are to be al-

---

lowed to do so without prejudice to their rights, as they shall be settled by the final decree in the cause. Neither party is to have costs on this motion.

