SARAH H. BOSTWICK, Appellant, *v.* ADOLPH FRANKFIELD, Respondent.

The rule as to the merger of a less estate in a greater is not inflexible, but in equity depends upon the express or implied intention of the person in whom the estates unite.

So, also, the equitable doctrine which protects one who has contracted for the purchase of land by treating him as the owner, and the vendor as the owner of the purchase-money, is not invariable, and cannot be applied where the intention of the parties is clearly adverse to such a presumption.

In June, 1870, defendant leased to one T. certain premises for the term of three years. In April, 1871, defendant entered into a contract to sell the premises to T. for a sum specified, a part to be paid on passing title, the residue to be secured by mortgage. The contract provided that, if T. did not carry out the contract on his part by June 1, 1871, the same should "thenceforth be null and void." No provision was contained in the contract as to possession under it, or as to a surrender of the lease. T. erected a church upon the premises, and mortgaged the same to plaintiff. A mechanic's lien was also filed and foreclosed, T.'s interest in the premises sold and bid off by plaintiff. T. did not perform the contract of sale within the time prescribed. He made payments toward the rent thereafter. For failure to pay in full, summary proceedings were instituted against him, and under a judgment therein he was dispossessed and defendant put in possession. In an action to enforce an alleged equitable lien upon the premises, *held*, that the lease was not merged in the contract of sale, but was intended to be kept in force until the contract was performed by T. and a deed given, up to which time, T. had no control or right of possession save by virtue of the lease; and T. having failed to perform the contract, his rights thereunder were forfeited, and the lease remained in force as if no contract had been executed, and that, therefore, the proceedings to dispossess T. were valid, and plaintiff had acquired no interest which entitled her to maintain the action.

(Argued June 3, 1878; decided June 21, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term, and ordering a new trial. (Reported below, 11 Hun, 475.)

This action was brought by plaintiff to enforce an alleged equitable lien upon certain premises in New York city, the title to which was in defendant.

The facts, as found by the trial court, were substantially as follows :

In June 1, 1870, defendant being the owner of three lots of land on the north side of Fifty-seventh street, in the city of New York, made a lease thereof to George E. Thrall, for three years from that date, at $1,500 per annum, with privilege of another year at $2,000 per annum, lessee to pay taxes and assessments. At that time said Thrall was a clergyman, and contemplated putting a church building on said property, which purpose was known to defendant, and in view of which, as Thrall testified, defendant verbally promised him to let him buy the property during the term of the lease at a fair market value.

In July, 1870, Thrall commenced to build his church ; defendant being frequently present at the church building, and advising with reference thereto ; the building was finished February, 1871. Meanwhile, Thrall had obtained loans and gifts towards his church building ; Mrs. Thrall, his wife, plaintiff's sister, had advanced $4,500, and the plaintiff $1,000 or $1,200, and the building had cost $23,000 or $24,000. On April 28, 1871, after the building was finished, Thrall and defendant entered into a contract for the purchase of the property by the former for $35,000, $5,000 to be paid down on passing of title, and for the balance a bond to be given secured by mortgage on the premises. The contract contained this clause, " and it is further understood and agreed that unless this contract shall be carried out by the party of the second part (Thrall) by the 1st day of June, 1871, the same and everything herein contained shall henceforth be null and void and of no further effect." Thrall did not complete the purchase and take the deed. He paid a portion of the rent falling due by the terms of the lease, after the time specified for the completion of the contract. In October, 1871, Mrs. Thrall assigned her claim to plaintiff, and Thrall thereupon gave

plaintiff his bond for $6,900, secured by mortgage on the lots, buildings, and on the lease, to cover the advances of both parties.

Mechanics' liens were filed against the church property in July and December, 1870, and judgment rendered in favor of the lienors September 14, 1871; execution was issued September 23, 1871, and the property was sold thereunder to plaintiff May 25, 1872, for $550; a sheriff's deed was executed to plaintiff November 23, 1872. On March 27, 1872, defendant instituted summary proceedings to dispossess Thrall upon the allegation that he (defendant) was landlord and Thrall a tenant of the property, holding over, after having made default in the payment of rent, etc.; Thrall did not appear, a judgment was rendered in favor of defendant and the marshal put him in possession; he continued in possession until he sold the premises in March, 1873, for $52,500.

*Wm. Peet*, for appellant. The contract of sale superseded the lease. (*Renard* v. *Sampson*, 12 N. Y., 561; *Chesbrough Erie R. R.*, 26 Barb., 9; *Hower* v. *Barker*, 3 Johns. R., 506; *Grangiac* v. *Arden*, 10 id., 293; *Tallman* v. *Green*, 3 Sandf., 437; *Canaday* v. *Stiger*, 3 J. & S., 423; *Springstein* v. *Schermerhorn*, 12 Johns., 357; *Livingston* v. *Potts*, 16 id., 28; *Bedford* v. *Terhune*, 30 N. Y., 403; *Abell* v. *Williams*, 3 Daly, 17; LEARNED F., in *Milliard* v. *McMullin*, 5 Hun, 572; *Schermerhorn* v. *Merrill*, 1 Barb., 511; *Reed* v. *Latson*, 15 id., 9; *Champney* v. *Coope*, 32 N. Y., 543; *Bascom* v. *Smith*, 34 id., 320; *Sheldon* v. *Edwards*, 35 id., 279; *James* v. *Morey*, 2 Cow., 246.) By virtue of the parol agreement to sell and Thrall's possession thereunder, and under the written contract of sale he became in equity the owner. Frankfield had a lien on the premises for the purchase-money. (Perry on Trusts, §§ 231, 233, 234, 237; *Tompkins* v. *Seeley*, 29 Barb., 212; Perry on Trusts, § 234; *Gilman* v. *Brown*, 1 Mason, 191; White & Tudor's Leading Cases in Eq., 272–275; *Williams* v. *Young*,

17 Cal., 403; 21 id., 227; *Borst* v. *Corey*, 15 N. Y., 505; *Keith* v. *Homer*, 32 Ill., 524; also §§ 788, 789 and 780, Story's Eq.; *Lecombe et al.* v. *Steele*, 20 How. [U. S.], 94, 103–104.) Thrall was entitled to compensation for money spent on the premises. (Story's Eq., § 761; *Foxcroft* v. *Lester*, 2 Vern. R., 456; 3 Prec. Ch., 519; *Wetmore* v. *White*, 2 Cam. Cas. Ev., 87; *Parkhurst* v. *Van Cortland*, 14 Johns. Rep., 15.) Thrall's interest in the contract of sale was a proper subject of assignment. (Perry on Trusts, §§ 227–234; *Stump* v. *Gaby,* 2 DeG. M. & G., 623; *Morgan* v. *Holford*, 1 Sim. Gif., 101; *Cogswell* v. *Cogswell*, 2 Edw. Ch., 321; *Malin* v. *Malin*, 1 Wend., 625; *Clapper* v. *House*, 6 Paige, 149; *Kent* v. *Mahaffey*, 10 Ohio, 204.) Thrall's failure to perform the contract before June 1, 1871, did not render it void but voidable. (Story's Eq. Jur., §§ 1314, 1315; *Garner* v. *Hamnah*, 6 Duer, 262–273; *Giles* v. *Austin*, 6 J. & S., 214; *Baxter* v. *Lansing*, 7 Paige, 350; *Norman* v. *Wells*, 17 Wend., 136; *Clark* v. *Jones*, 1 Denio, 516; *Buckbee* v. *Ins. Co.*, 18 Barb., 541; *Goit* v. *Ins. Co.*, 25 id., 189; *Mutual Life Ins. Co.* v. *French*, 30 O. St., 24; 17 A. L. J., 329; *Wadman* v. *Calcraft*, 10 Vesey, 67, 70; *Sanders* v. *Pope*, 12 id., 282; *Davis* v. *West*, 12 id., 475; *Hill* v. *Barclay*, 18 id., 58; *Peachy* v. *Somerset*, 1 Str., 447, 453; *Gale* v. *Nixon*, 6 Cow., 445; *Merchants' Bank* v. *Thomson*, 55 N. Y., 7; *Robb* v. *Montgomery*, 20 Johns., 15; *Canfield* v. *Westcott*, 5 Cow., 270; *Mancius* v. *Sergeant*, 5 id., 271; *Church* v. *Ayers*, 5 id., 272; *Hubbell* v. *Van Schoening*, 49 N. Y., 326; *Peters* v. *Delaplaine*, 49 id., 362; *Delavan* v. *Duncan*, 49 id., 485; *Cythe* v. *La Fontain*, 51 Barb., 186; *Tompkins* v. *Seely,* 29 id., 252; *Thomas* v. *Wickmann*, 1 Daly, 58; *Freeman* v. *Bissell*, 63 N. Y., 168; *Thompson* v. *Smith*, 63 id., 301.) To terminate Thrall's rights in the premises it was necessary for Frankfield to institute regular proceedings for that purpose. (*Sackett* v. *Barnum*, 22 Wend., 605; *Dolitle* v. *Eddy*, 7 Barb., 74; *Thompson* v. *Brown*, 60 id., 463; *Shipsey* v. *Bowery Nat. Bk.*, 4 J. & S., 501.) Frankfield was not entitled in equity to

appropriate the improvements made upon the premises. (*Carr* v. *Wallace*, 7 Watts, 394; *McKelvey* v. *Truby*, 4 Watts & S., 323; *Commonwealth* v. *Moltz*, 10 Pa. St., 530, 531; *Hill et al.* v. *Epley et al.*, 31 id., 331; 2 Story's Eq., § 1237; *Green* v. *Biddle*, 8 Wheat., 1, 77, 78; *Parkhurst Van Cortland*, 14 Johns. R., 15; *Swartwout* v. *Burr*, 1 Barb., 495; *McCray* v. *McCray*, 30 id., 633; *Malius* v. *Brown*, 4 N. Y., 403; *Tallman* v. *Franklin*, 14 id., 584; *Utter* v. *Stuart*, 30 Barb., 20.)

*Chas. Tracy*, for respondent.    The conversations had from time to time between Thrall and Frankfield do not constitute a contract of sale.    (*Stanton* v. *Miller*, 58 N. Y., 192.)    On the failure of Thrall to perform the conditions precedent, and by his abandonment of the contract, Frankfield had the right to treat it as rescinded.    (*Green* v. *Groen*, 9 Cowen's R., 46; *Robb* v. *Montgomery*, 20 Johns., 13; *Utter* v. *Stuart*, 30 Barb., 20; *Gale* v. *Nixon*, 6 Cowen, 445; *Egglestone* v. *N. Y. and Harlem R. R. Co.*, 35 Barb., 162.)    In a case like the present equity will not intervene for the relief of the vendee.    (Story's Eq. Jur., §§ 771, 776, 792, 793, note 1; *Swartwout* v. *Burr*, 1 Barb. Ch., 495; *Merchants' Bk.* v. *Thompson*, 53 N. Y. Rep., 7; *Hubbell* v. *Schoening*, 49 id., 326; *Thompson* v. *Smith*, 1 N. Y. Weekly Dig., 456.) The lease from Frankfield to Thrall did not merge in the contract of sale.    (*Schermerhorn* v. *Merrill*, 1 Barb., 512; *Reed* v. *Patson et al.*, 15 id., 9; *James* v. *Morey*, 2 Cowen, 246; *Millard* v. *McMullin*, 5 Hun, 572 [581]; affirmed, 68 N. Y. R., 345; *Nicholson* v. *Halsey*, 1 Johns. Ch. R., 417; Kent's Comms., 4, 116; *Hosford* v. *Mervin*, 5 Barb.; 8 C. R., 52; *James* v. *Morey*, 2 Cowen, 246; *Champony* v. *Coope et al.*, 32 N. Y., 543; *Bascom et al.* v. *Smith*, 34 id., 320; *Sheldon* v. *Edwards*, 35 N. Y. R., 279.)

MILLER, J.    If the lease executed by the defendant to Thrall was valid and operative, at the time when the summary proceedings were instituted by the defendant, and pos-

session obtained under the same, the plaintiff cannot maintain this action.     Such lease was executed on the 1st day of June, 1870, for the term of three years, with the privilege of another year at an increased rent.     The contract for the purchase of the premises bore date on the 28th day of April, 1871, and contained a provision that a certain amount was to be paid in cash on passing the title, a large portion of which was to be raised by a first mortgage, which was to be used in paying off the mortgages then on the property ;   for expenses of raising the loan, and rent of premises then due and the cash to be paid on account of the purchase-money. A mortgage was also to be executed to the defendant, payable in one year.     The contract also provided that unless it was carried out by the defendant by the 1st day of June, 1871, the same and everything therein contained should be null and void and of no further effect.

The necessary loan was obtained by one of the officers of the church which Thrall had erected ;   the title was examined, mortgages prepared for Thrall, according to the contract, and the parties were to meet at the office of such officer, for the purpose of closing the transaction.   The defendant and his wife were then ready to execute a conveyance, but Thrall did not appear, or make any effort to fulfill the contract, nor did he at any subsequent time offer to do so.   He undoubtedly intended to abandon the contract, and I think it became forfeited by his neglect to comply with its terms. And, at this point in this aspect of the case, the question arises, whether the lease continued in force, and the defendant had any rights under the same.     The contract contained no clause by which possession of the premises was transferred to Thrall ;   nor did Thrall become entitled thereto, by virtue thereof, before the deed was executed ;   nor was there any valid instrument executed under seal, as the law requires, by which the lease was to be surrendered and given up.   The effect of the contract was, that in case he fulfilled its terms a deed was to be given, and then, and not before, would the lease be extinguished by the superior title.   The rent of the

premises certainly continued until the first of June, when the contract was to be finally consummated; and as this failed, the lease continued in force afterwards. It was under the lease and nothing else that Thrall remained in possession, and beyond this he had no lawful claim to the premises. The parties evidently understood that the lease was in force, and after the failure to fulfill the contract, Thrall paid the defendant $600, on account of rent unpaid. There is also evidence that the following fall he promised to pay all the rent which he owed upon the lease.

The doctrine of merger, it seems to me, can have no application where the instrument, as well as the acts of the parties, fail to show that there was any such intention. It is a reasonable presumption, warranted by the facts, that if it had been intended to cancel the lease, or that it should merge in the contract, a provision to that effect would have been inserted. It was not only entirely silent upon the subject, but the contract, on its face, as well as the acts of the parties, fail to show that there was any such intention. Not a single word is contained in the agreement that the lease was to be surrendered, or that possession was to be held under the contract. The true interpretation of the contract, under the circumstances, is that the lease was to remain in force until the execution of the deed, in pursuance of the contract. Before this was done Thrall had no control over the premises and no right to the possession thereof, except by virtue of the lease, and as Thrall failed to fulfill the contract, no deed was executed, and the lease continued in full force and effect, as it had previously existed, the same as if the contract had never been executed. It never was impaired, surrendered, or in any way affected by the contract, and could not be, until a conveyance was made.

The defendant's counsel cites numerous cases to sustain the position that the contract of sale superseded the lease and fixed the relations of the parties, and that it was extinguished, and thereby became merged in the contract.

A careful examination of the authorities referred to dis-
closes that all of them are distinguishable from the case
at bar, and have no application to a case where no intention
is manifest that the last instrument should supersede the
lease. There is no question as to the correctness of the
principle that a contract in writing usually covers and
supersedes all prior negotiations. Nor can it be doubted
that where it is apparent that the intention was that a writ-
ten contract entered into, which covers the whole subject,
should be a substitute for a prior agreement, that such prior
agreement will thereby be extinguished and superseded.
No such case is presented on this appeal, and the rules refer-
red to cannot affect the decision here. So far as Thrall
acquired any right under the contract, it was an equitable
one which became forfeited on his failure to perform. (*Can-
field* v. *Westcott*, 5 Cow., 270.) Nor is the claim that the
lease was merged in the contract sustained by authority.
The rule is that, at law, where a greater estate and a lesser
meet, and coincide in the same person and the same right,
the lesser estate is merged, and that the equitable is merged
in the legal estate. In equity the rule is not inflexible, and
depends upon the express or implied intention of the person
in whom the estates unite, whether the equitable estate shall
merge in the legal estate or still be kept alive. (*James* v.
*Morey*, 2 Cow., 246; *Schermerhorn* v. *Merrill*, 1 Barb., 511;
*Reed* v. *Latson*, 15 id., 9; *Van Nest* v. *Latson*, 19 id.,
604; *Millard* v. *McMullin*, 68 N. Y., 345.) As we have
already seen it is apparent that no intention existed that
Thrall should become the owner of the premises before the
conveyance to him, and it was only when a deed should be
executed that the estate would become changed, and Thrall
could acquire any title to the same. As the lease remained
in force and Thrall acquired no right under the contract to
the possession of the premises, but continued to hold under
the contract, there is no ground for claiming that he was the
equitable owner and the defendant had a lien for the pur-
chase-money. There is no equitable principle which will

invest him with any right as owner under the facts presented.

The equitable doctrine which protects an individual who has contracted for the purchase of land and treats him as the owner, and the vendor as the owner of the purchase-money, is not an invariable rule, and is subject to some exceptions. It cannot be applied when the intention of the parties is clearly adverse to any such presumption. Such intention is apparent here not only from the provision in the contract that unless carried out at the time named it should become void, but from the absolute refusal of the party to perform, as well as from the apparent intention, by a failure to provide for taking possession, that the lease should continue in force.

The lease not being extinguished by the contract or by the acts of the parties, but remaining in force, it follows that the proceedings to dispossess Thrall were valid; and the claim of the plaintiff has no foundation. She had acquired no right whatever as against the lease and makes out no valid claim which entitles her to maintain this action.

Having arrived at this conclusion it is not essential to consider whether any relief could properly be granted by a court of equity from the failure of Thrall to fulfill the contract at the time therein named, as well as the other questions raised. As the case stands, we think no valid reason exists for a reversal of the order of the General Term, and that the same must be affirmed, and judgment absolute ordered for the defendant on the stipulation, with costs.

All concur.

Order affirmed and judgment accordingly.