SCHUYLER R. INGHAM, Appellant, v. HERKIMER COUNTY LIGHT AND POWER COMPANY, Respondent.

Fourth Department, May 5, 1920.

**Landlord and tenant — when lease superseded by contract of sale — practical construction placed on transactions as controlling subsequent parties.**

The plaintiff's predecessor in title, who owned certain lands on both sides of a stream, organized a power company of which he was practically the owner, and leased to the company water rights and lands essential to the operation of the plant and about two weeks thereafter before anything had been done under the lease he entered into a contract to convey to the said company certain land on which the plant was to be erected and which was to be flowed and the land thus contracted to be sold included very much of the land which was included in the lease. He thereafter made a general assignment for the benefit of creditors and his assignee conveyed to the

Fourth Department, May, 1920. [Vol. 191.

receiver of the power company the land covered by the contract. His assignee conveyed the balance of the assignor's lands to two persons, the plaintiff's immediate grantors, excepting the land contracted to be conveyed to the power company, and they, after dividing the land into several parcels, transferred to the plaintiff land on both sides of the stream but expressly reserved in the deed all rights which the power company had in the lands by virtue of the said contract of sale. In an action to recover the rental reserved in the lease,

*Held*, on all the evidence, that the lease to the power company was superseded and merged in the contract of sale which had for its primary purpose the conveyance of the water power rights covered by the lease.

The fact that the lease was executed by the power company by its nominal president after the execution of the contract of sale did not, under the circumstances, prevent the contract from superseding the lease.

The actions of the parties at the time the lease and contract were made indicate clearly that they intended the contract to abrogate the lease, and as the rights of no other parties intervened between the execution of the lease and the contract of sale, the practical construction placed on the transactions by the only persons interested in the properties at the time these papers were made should be controlling.

APPEAL by the plaintiff, Schuyler R. Ingham, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Herkimer on the 1st day of May, 1916, dismissing the complaint on the merits upon the report of a referee.

*Miller & Hubbell* and *A. M. Mills* [*James F. Hubbell* and *James D. Judson* of counsel], for the appellant.

*Myron G. Bronner*, for the respondent.

CLARK, J.:

This is an action to recover moneys claimed to be due plaintiff for rent of certain real estate and water privileges, and the determination of the case involves title to water rights at Dolgeville, N. Y.

On the 1st day of May, 1897, Alfred Dolge resided at Dolgeville, N. Y., and owned lands near that village on both sides of East Canada creek, and also owned the riparian rights to the water in said stream at that point. On that date he and his wife executed a paper, here called a lease, with the Dolgeville Electric Light and Power Company, so that the company could construct and maintain a dam across East Canada creek at High Falls near said village, and a

power house and buildings necessary for the development of the water power at that point.

The primary purpose of all parties to the instrument was to enable the said electric light company to have the right and privilege to develop the water power at High Falls on said stream, and no particular land was described as being included in said lease.

By the so-called lease the electric light company covenanted and agreed to build and maintain a stone dam across the East Canada creek at High Falls, and to erect and maintain in the vicinity of said dam necessary feeders, bulkheads, piers, abutments, inlets, wheelpits, flumes, waterwheels, and other necessary devices, buildings and appliances, as should be necessary for the storage and use of the waters of East Canada creek and its tributaries above said dam, and the power derived therefrom, and the electric light company also covenanted and agreed to erect and maintain necessary power house, buildings and machinery upon the lands adjacent to High Falls as might be necessary for the full development and use of the water power of said creek at said point.

By said instrument Mr. Dolge and his wife also leased to the electric light company all lands necessary for the anchorage of said dam on both sides of the creek, and the right to erect in the vicinity of such dam such bulkheads and other devices for taking such water from said creek and conducting it over lands of said Dolge to the end that the electric light company should have full enjoyment of the water privileges and also the right to go over lands of said Dolge from the highway to reach its dam and power house, and the right to use the waters of said creek for the purposes of its business.

The lease was to run for thirty-five years, and the company was to pay an annual rental of $4,000, and an additional yearly rent of $10 for each and every horse power developed and used over and above 400 horse power.

Alfred Dolge was practically the owner of the Dolgeville Electric Light and Power Company. It had been organized by him, its capital stock was $25,000, and he owned it all excepting a few shares (perhaps thirty-five) which he had given to certain of his employees so they could serve as directors of the company.

About two weeks after this lease had been made by Dolge to his electric light and power company, and on May 15, 1897, he executed to the company a contract whereby, for the consideration of $10,000, he agreed to convey to the electric light and power company the site of the proposed dam which the company under the lease of May 1, 1897, had undertaken to build, and also the lands covered by the water of the pond to be created by the building of the dam, and other properties as described in said contract. This contract was Exhibit 16 in the record, and the precise lands contracted to be sold were to be determined by a survey thereafter to be made.

A glance at the map shows that the land contracted by Exhibit 16 necessarily included very much of the land which the electric light company would use adjacent to the creek in the development of its water power privileges, contemplated by the lease of May 1, 1897.

In April, 1898, Dolge, being in financial straits, made a general assignment for the benefit of his creditors to Walter N. Kernan, and on March 1, 1900, the assignee conveyed the premises Dolge had contracted to convey to the electric light and power company by his contract of May 15, 1897, to James D. Feeter, who had been appointed receiver of the Dolgeville Electric Light and Power Company.

In June, 1897, the Dolgeville Electric Light and Power Company executed to the Metropolitan Trust Company, as trustee, a mortgage for $50,000, covering " all and singular the lands, tenements and hereditaments, and the entire plant and property " at Dolgeville. This mortgage was subsequently foreclosed and the property described therein was purchased by this defendant for $20,250, and it went into possession, and now claims to own the property.

On March 21, 1899, Walter N. Kernan, as assignee of Alfred Dolge, sold by contract to Myron G. Bronner portions of the lands formerly owned by Dolge lying on the west side of East Canada creek, near High Falls, for $1,225, the premises consisting of 116 acres of land, but the deed executed May 1, 1899, expressly excepted the property theretofore contracted by Dolge May 15, 1897, to the Dolgeville Electric Light and Power Company.

Mr. Bronner divided the lands conveyed to him by Kernan, and sold different parcels thereof to different persons, and on September 20, 1900, he sold to this plaintiff the balance of the lands conveyed to him by Mr. Kernan, but expressly reserved in the deed " all the right, title, interest, claim and demand (if any) which the Electric Light & Power Company of Dolgeville, N. Y., its representatives, successors or assigns may have or may hereafter become entitled to, of, in and to any portion of the said 116 acres of land hereinabove described under and by virtue of a contract alleged to have been made and executed by Alfred Dolge to Electric Light & Power Company, of Dolgeville, N. Y., under the date of May 15, 1897."

Plaintiff also bought certain lands on the east side of the creek at High Falls from A. M. Mills, which he had acquired in 1900 from Kernan, assignee of Alfred Dolge, and these latter lands adjoined the creek on the east side.

Plaintiff claims the right to recover here on the theory that he is the owner of all right, title and interest in the premises, water rights and privileges that Dolge owned on the 1st day of May, 1897, by virtue of the conveyances above referred to, including the property rights and privileges, etc., that Dolge had contracted to sell to the electric light company May 15, 1897, which defendant claims to have acquired under its deed from Feeter as receiver of the electric light and power company, dated September 30, 1901.

The lease in question was never assigned to plaintiff, and when the Dolge lands were sold by Kernan, as assignee, at public sale, to various people, no mention was made of the lease, or that the purchasers would acquire any rights under it, and no rent was ever paid by the company to Dolge or his assignee. The contract made May fifteenth, between Dolge and the electric light company was intended to make somewhat more definite and certain the rights of the company in the water privileges of East Canada creek at High Falls, and particularly with reference to the water to be stored up by the dam which the company, under the lease, agreed to erect, and it made no reservation to Dolge of any rent, or the right to collect rent, under the lease.

It must be remembered that Dolge at this time owned all

the lands on both sides of the creek in the vicinity of High Falls, and was the practical owner of the electric light company, and it is not reasonable or probable, if he intended the lease to survive the contract, that he would omit all reference to it, or fail to reserve the rent provided for under it.

Plaintiff cannot claim ownership of this lease and the rentals under it merely because he is now the owner of portions of the property formerly owned by Dolge adjacent to this creek. Why should he make such claim any more than eight or nine other purchasers of portions of the Dolge properties which were adjacent to East Canada creek, and whose lands were more or less affected by the· construction of the dam and appliances provided for in the lease? By his deed plaintiff only succeeded to a portion of the lands abutting on this stream, and it expressly excepted all rights of the electric light company.

The fact that neither Dolge nor any of his successors in title to any of these lands ever made any claim for rent under this lease until plaintiff made the claim in question, justifies the inference that none of them had the slightest idea that they had any rights or interests under the lease, and it would seem that plaintiff, in order to recover, should have shown that he owned all the land affected by the High Falls improvements which were owned by Alfred Dolge at the time the lease was made. This he did not, and could not do, because he never acquired all the lands abutting the stream in the vicinity of this High Falls improvement. All that he ever owned on the east side was a small parcel of land formerly owned by Mr. Mills, and a portion of the lands on the west side abutting the stream. But portions of that same tract on the west side and contiguous to the stream were sold by Mr. Kernan; as assignee, to other parties, to wit, George W. Ward, A. G. Horn, Charles Dedicke, Joseph Hurth, and three or four others.

The fact that plaintiff paid but $1,329 for the entire property, including all that he acquired on both sides of the creek, is some indication of the fact that he never understood he was purchasing any rights under the lease which would enable him to recover $36,000 for rent of the properties described therein.

May 1, 1897, when the lease was made, Mr. Dolge owned all this property on both sides of East Canada creek. Two weeks later he made a contract with the electric light company, contracting to convey lands above the dam which would necessarily include much of the land affected by the improvements contemplated in the lease, and the very action of the parties indicates that they intended the contract to convey, dated May 15, 1897, should supersede and abrogate the lease made two weeks earlier, and under which plaintiff now claims the right to recover rent.

If it had not been the intention of Mr. Dolge, who owned all the lands, and practically all of the electric light company, to have the contract supersede the lease, he certainly would have reserved it and the rent referred to in it when he made his contract of May fifteenth. It may be that the fact that such reservations were omitted was a loose way of doing business, and if the ownership of the land and the electric light company had not been practically in one person, a different construction of the transaction might have been permissible. But Mr. Dolge, because of his ownership of the lands and water rights on both sides of the creek at Dolgeville, and also because of his ownership of practically all of the capital stock of the electric light company, was in a position so that his intentions with reference to the transaction of May 1, 1897, and the contract of purchase and sale, made May 15, 1897, are of the utmost importance, and should be controlling. (*Bostwick* v. *Frankfield*, 74 N. Y. 207; *Lewis* v. *Angermiller*, 89 Hun, 65.)

Before a thing had been done under the lease, Dolge and the electric light company entered into this contract of sale which created a new relation between them, inconsistent with the relation of landlord and tenant, and it had the effect of surrendering the lease by operation of law. (18 Am. & Eng. Ency. of Law [2d ed.], 362.)

The precise lands leased, and also contracted, were not particularly described either in the lease or contract, but what the parties were seeking to accomplish was to have the electric light company acquire the water rights in the vicinity of High Falls for the purposes of its business. May 1, 1897, Dolge leased them to the company, and May fifteenth of the

same year he contracted to sell them to the company, and the lease would not survive the subsequent contract, which had for its primary object the conveyance of the water power privileges in the vicinity of High Falls, because a contract by a landlord to sell the leased premises to the tenant would operate as a surrender of the lease, there being no intervening estate or interest. (24 Cyc. 1343.)

Because of his ownership of both the land and the electric light company, Mr. Dolge had a right to supersede the lease by the contract of sale if he so desired, and the fact that he made the contract covering much of the same land affected by the lease without mentioning the lease or reserving rent under it, is a strong indication of the fact that he did not intend that the lease should survive the contract, but that it should be superseded by it.

If plaintiff understood that he was purchasing any valuable rights under the lease when he bought his property for $1,329, why was he not sworn as a witness to give his version of his purchase? And why did he wait more than four years after the rents he now claims had fallen due before asserting this claim?

Plaintiff lays much stress upon the fact that the nominal president of the electric light company, Edmund R. Wanckel, acknowledged the lease May 21, 1897, which was after the contract in question was made. That does not seem to be a circumstance which is of any great importance. Mr. Dolge resided at Dolgeville, and executed the lease there. Mr. Wanckel resided in New York city, and was an employee of Dolge, and merely held stock in the company for the purpose of being qualified as a director. The lease was probably sent to New York for execution, and it does not appear why it was delayed, but that did not preclude the owner of the property, and practically the sole owner of the electric light company, superseding the lease by the land contract if he chose to do so, the rights of no other person having intervened between the dates of these two instruments.

It is inconceivable that Mr. Kernan, a lawyer of reputation, would deliberately throw away the most valuable asset of the estate assigned to him, if he had regarded the lease as in life when he took charge of the property.

The actions of the parties at the time the lease and contract were made indicate clearly that they intended the contract of bargain and sale to abrogate the lease, and inasmuch as the rights of no other parties had intervened between the dates of these instruments, the practical construction placed on the transactions by the only persons interested in the properties at the time these papers were made should be controlling, and plaintiff should not be permitted to recover a large sum of money under a lease that he never purchased, and never intended to purchase.

Under the evidence the conclusion is irresistible that plaintiff's claim is without merit. The issues raised by the pleadings were properly disposed of by the learned referee, and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.