Campbell, Chief Justice,
delivered the opinion of the court :
The plaintiff’s, through an agent, proposed to lease certain properties to the United States, with an option to purchase at a named price. The latter made modifications in the proposal in a letter by the Assistant Secretary of the Treasury, stated more definitely the terms and conditions, and indicated a willingness to accept the proposal as modified. .The modified proposal, with its terms and conditions, was in turn duly accepted by plaintiffs. This letter provided that in the event the United States availed itself of the privilege of purchasing the property the purchase price should be $379,800, subject to the deductions set forth in another paragraph providing that out of the rent already paid by the United States “ a prorated sum on the basis of $10,000 per annum ” should be applied to the reduction of the purchase price. It also had a provision to the effect that the United States could terminate the lease or any renewal thereof and surrender possession at any time “upon six months’ written notice of such intention.” It also stated that “ the rent to be paid you by the United States for such use and occupancy of said property shall be $46,500 per annum, payable in equal monthly installments, in arrears.”
The plaintiffs having assented to this proposal, the United States went into possession of the properties under the terms of the agreement on or about January 20, 1920. In May of that year notice was given to plaintiffs’ agents that the United States desired “ to renew the lease of said property for the fiscal year ending June 30,1921, as specified in paragraph three of the acceptance,” and thereafter the United States continued in possession, paying the rent reserved in monthly installments as it accrued, and was so in possession *561 on August 9, 1921. On this latter date the Assistant Secretary of the Treasury notified plaintiff’s agent that “ this department, in view of the recommendation of its consultants on hospitalization hereby exercises the option given by you to the United States to purchase, at any time during the life of a certain lease agreement dated January 17, 1920, or any renewal thereof,” the property mentioned “ for the sum of $379,800, less a prorated sum on the basis of $10,000 per annum out of the rent paid by the United States during the term of. the renewal thereof (in total amount not to exceed $364,000) in accordance with the terms” of the agreement mentioned. This notice further stated that the acceptance was subject to the requirements set forth in certain printed conditions, attached to the acceptance. Among these conditions was paragraph 9 thereof, stating that the Attorney General had been requested to give the United States attorney for the district in which the lands were situated such instructions as might be necessary to procure proper conveyances, and that application should be made promptly to the district attorney for directions to plaintiffs and that title papers should be delivered to him; that a survey of the properties required to be made should be forwarded to the Supervising. Architect of the Treasury Department; and that a blue print of this survey would be forwarded by the Supervising Architect to the district attorney for use in examining the title. Paragraph 9 further provided:
‘‘When the title papers are received at this department with the Attorney General’s favorable opinion as to the validity of the title of the whole of said site, and when all the conditions of this acceptance have been satisfactorily complied with, or acceptable security given for such compliance with respect to any minor item the performance of which it may be mutually agreed shall be postponed, this department wiil promptly take up the payment of the purchase money, as provided in the letter (or any modification thereof) accepting the proposal for the sale of the land.”
Without any fault of the plaintiffs the defendant failed to accept the conveyances of title until December 28, 1921, and until that date did not make any offer either to accept the title or pay the purchase price. In the meantime, how *562 ever, the rent reserved, payable monthly, had been paid to plaintiffs lor each of the months of August, September, October, and November, the payments being at the end of the respective months.
In ascertaining the amount of purchase money that should be paid after the deeds were executed, and the Attorney General’s opinion favorable to the title had been received, which was in December (more than four months after the option had been exercised), the officials representing the United States concluded that from the gross stipulated purchase price there should be deducted not only the prorated sum on the basis of $10,000 per annum, mentioned in the agreement, but also the sum of the installments of rent for the four months mentioned, which had been paid to plaintiffs, reducing, however, this latter sum by a proportionate part of the August installment, and thus allowing plaintiffs rent up to the date in August when the option was exercised. The difference between the sum of the four installments and the amount allowed for August is $13,300, and by this amount the purchase price was reduced, in addition to the deduction on the basis of $10,000 per annum. The balance of the purchase price was tendered to plaintiffs upon the acceptance of the conveyances and was received under protest, they reserving a right to sue for the balance claimed to be due them.
The question, therefore, is whether the deduction of the sums paid during the four months was proper, and its solution depends upon the answer to the inquiry whether the relation of landlord and tenant, existing between the parties when the option was exercised, was, by its exercise, changed into one of vendor and vendee. This must in general be determined from the intention of the parties to be gathered from the contract and attendant circumstances. Doe d. Gray v. Stanion, 1 M. & W. 695; Blanchard v. McDougal, 6 Wis. 167; Hill v. Allen, 185 Mass. 25; Bostwick v. Frankfield, 74 N. Y. 207.
An important consideration is whether the party exercising the option is in possession at the time as a tenant or is let into possession upon the exercise of the option. It is *563 said by Parke, B., in the English case cited that where the purchaser is already in possession as tenant from year to year it must depend upon the intention of the parties whether a new tenancy at will is created or not. The Wisconsin court in Blanchard v. McDougal, supra, held that the complainant was in possession as a tenant, owing fealty to the defendant as his landlord, and that the legal presumption was that such relation continued. In Hill v. Allen, supra, the facts showed a lease, with an option to purchase; the tenants refused to pay rent, claiming that they had given notice of their purpose to buy the property, and continued in possession for some months. The • Massachusetts court say that it was clearly the duty of the defendants under the terms of the option within a reasonable time after notifying the plaintiff of their intention to purchase to tender the $2,600 and demand a deed, and held that until this was done they were liable for rent. In Bostwick v. Frankfield, supra, the New York court say (p. 212) : “ The rent of the premises certainly continued until the first of June, when the contract was to be finally consummated; and as this failed, the lease continued in force afterwards. It was under the lease and nothing else that Thrall remained in possession.”
Unquestionably, when the option had been duly exercised, there arose a valid contract of sale. Boston & M. R. R. Co. v. Bartlett, 3 Cush. 224; Brown v. Slee, 103 U. S. 828; Willard v. Tayloe, 8 Wall. 551. But it was an executory contract, the performance of which depended on future contingencies. These pertained to the performance of the contract, and not to its making. Breen v. Mayne, 141 Iowa, 399, 405; Watson v. Coast, 35 W. Va. 463. The owners became bound to convey and the United States became bound to pay, subject to conditions mentioned. One of these was that before any payments would be made or become due an opinion favorable to the title should have been received from the Attorney General. Section 355, Revised Statutes, requires that such an opinion be had, and the defendant insists that this section must be read into the contract between the parties — a contention we are not disposed to question.
*564 But the stated terms of acceptance provide for substantially the same thing that section 355 requires, and postpone any payment accordingly; and if it could be said that this section has a broader meaning than the terms of the acceptance, such a view would but emphasize the conclusion that the United States did not, and lawfully could not, agree to both purchase and pay for the lands before essential conditions had been performed. The lease and the notice of acceptance are silent as to what would become of the tenancy from year to year pending an approval of the title and a consummation of the sale. In these circumstances the holding of possession should be referred to the lease (cases, supra). It is not a reasonable inference, from the action of the parties, that the plaintiffs intended to yield their right to receive monthly installments of rent in substantial amount for an indefinite period and upon a contingency that might not happen at all. Nor is it to be assumed that the United States intended to secure to itself the benefit of a continued occupancy of the premises freed from any liability to pay rent during an uncertain period that could readily be prolonged until the end of the term. If such a result had been contemplated, the lease, or the notice accepting the option, would likely have contained some reference to it. The fact that installments of rent as they accrued were regularly paid and received after the exercise of the option furnishes a practical construction by the parties refuting the idea that the tenancy from year to year was intended, upon the mere exercise of the option, to become a tenancy, at will. Bostwick v. Frankfield, 74 N. Y. 207, 213. Upon this point it is said in Gray v. Stanion, supra, p. 701: “ But if the agreement is conditional to purchase only provided a good title should be made out, and to pay the purchase money when that should be done, and the estate conveyed, there is no room for implying any agreement to hold as tenant at will in the meantime, the effect of which would be absolutely to surrender the existing term, whilst it would be uncertain whether the purchase would be completed or not.”
As in other cases already cited above, it was held in Journe v. Hewes, 124 Calif. 244, which was an action for rent, that *565 under a lease containing an option to purchase the relation of lessor and lessee continued until a tender or offer to pay the purchase money, and that the mere notice of an intention to purchase did not constitute the relation of vendor and vendee. As above suggested, this is not a case where under a contract of sale the United States was permitted to enter. Where possession is given voluntarily under such a contract without any provision for rent in the meantime, the owner can not hold the United States for use and occupation or for damage because of delay in accepting the title. The tenancy in such case is at will. Carpenter case, 17 Wall. 489; Merchants Exchange Co. ease, 1 C. Cls. 882. But in the instant case the United States was in possession, holding a term for years, when it elected to purchase upon certain conditions. Being already in possession, it can not be said to have entered under the contract of purchase. Referring to the distinction, it is said in Gray v. Stanion, supra, that “ it is the letting into possession,” and not the agreement of purchase, that creates the tenancy at will. The plaintiff could not limit the right of the United States to continue in possession during the term of the lease, whether the contract of purchase was finally consummated or not. The defendant could terminate it on six months’ notice, as provided for in the lease, or it could be terminated by merger in a greater estate. The United States did not become the owner of the property until the conveyances of title were accepted. It had not contracted to pay for the lands until title was approved and conveyances made. In his letter exercising the option the Assistant Secretary was careful to say that when the title was satisfactory to the Attorney General and he had so advised the department, and all the conditions of the acceptance had been complied with by the plaintiffs, the department “ would promptly take up the payment of the purchase money.” The plaintiffs remained owners, retaining title, and the defendant had acquired no estate into which the term for years could merge until the sale was consummated in December. The several payments made in the meantime were properly made on account of the installments of rent reserved in the lease, and *566 should not have been deducted from the purchase price agreed to be paid.
Because the transaction was not closed until the latter part of December, the plaintiffs contend that they should be allowed rent up to the date in December when the defendant made its payment. Another principle intervenes, however, which prevents this. The December installment of rent could not accrue under the terms of the lease before the end of the month, and prior to that time the tenant holding under the lease had succeeded to the fee, by conveyances of title by the landlords. Rent follows the reversion, and before the rent became due the reversion had passed to the United States. In these circumstances, as was said by Chief Justice Richardson in York v. Jones, 2 N. H. 454, 456, “ there is no doubt that the rent passed as incident to the reversion and became extinguished,” or, as said in another case, “ the term for years was drowned or merged in the fee-simple estate and became extinct.” Liebschutz v. Moore, 70 Ind. 142, 147. Thpre could not be a right of action until the installment of rent accrued according to the lease, and when that time arrived the plaintiffs had ceased to be owners. The court can not apportion the rent reserved.
Our conclusion is that the plaintiffs are entitled to recover as unpaid purchase money the amounts deducted on account of the rent for four months, which had been paid as stated, subtracting therefrom the amount allowed for part of August. Judgment, will accordingly be entered in their favor in the sum of $13,300. And it is so ordered.
Graham, Judge; Hay, Judge; and Downey, Judge, concur.
Booth, Judge, not sitting.