## SAMUEL BLANCHARD, Appellant,

### *vs.*

## DAVID McDOUGAL, Respondent.

### APPEAL FROM MILWAUKEE CIRCUIT COURT.

The mere payment of a portion of the purchase money, unaccompanied by any other act, is not such a part performance of a parol agreement for the sale of lands, as takes the case out of the statute of frauds.

Payment of the purchase money, or a part thereof, together with a delivery of the possession by the vendor to the vendee, and continuation thereof, is such a part performance as takes the case out of the statute.

When the purchaser *by parol* is a tenant in possession, of the vendor, his continued possession will be referable to the tenancy and not to the contract of purchase.

But it should seem that if, at the time of the purchase, and as a part and parcel of the contract of purchase it was specially agreed that from thenceforth the tenancy should cease, and the possession should be deemed to be under the contract, such possession coupled with payment of purchase money would avail as part performance.

The ancient rule, that the court will make a contract for the parties, *ex aequo et bono*, out of their transactions, no longer exists.

In order that a parol contract should be relieved from the statute of frauds on the ground of part performance, it must be established by competent proofs, to be clear, definite, unambiguous and unequivocal in its terms.

This was a bill for specific performance of a parol agreement for the purchase of a lot in the city of Milwaukee. The important question in the case was upon the *fact* of the agreement being made, which was alleged by the complainant and denied by the defendant. It was brought to issue and tried by the court below upon testimony taken in open court, and the Circuit Judge found for the defendant.

The contract as alleged in the bill, and the material testimony on both sides, are recited at length in the opinion of the court.

*Butler, Buttrick and Cottrill* for appellants.

*J. H. Paine and Son* for respondent.

· *By the Court*, Smith, J. This is a suit brought by the appellant to enforce the specific performance of a parol contract for the conveyance of land.

It is believed that this court has gone as far to enforce specifically the performance of contracts, but no farther, than the authorities will justify, or sound principles of equitable jurisprudence required; and we are not inclined to dispute the position, that part performance of a parol contract for the purchase of lands, accompanied by delivery of possession, is sufficient to take the case out of the statute of frauds. Were that the only question here, we should have little difficulty in arriving at a satisfactory conclusion.

It is claimed by the plaintiff, and so alleged in his bill of complaint, that in September, 1855, being then in possession of lot 15, in block 68, in the seventh ward of the city of Milwaukee, as a tenant under the defendant, who was the owner thereof in fee, he entered into a contract with the defendant for the purchase of the same, for the sum of $3000; $50 to be paid down, $450 at the time of making the deed, and the remainder in three equal instalments, with interest at the rate of eight per cent. per annum; that $50 was paid down at the time of making the contract; that the plaintiff remained in possession thenceforth under his contract of purchase; that he had made a tender of the $450, and a mortgage to secure the remainder of the purchase money, and demanded a deed, which was refused.

The defendant, in his answer, denies all these material allegations, fully and unequivocally. The case was brought to issue, and was heard at the September Term, 1857, of the Milwaukee Circuit Court, upon testimony taken in open court, which is duly reported. The court below dismissed the bill, and the plaintiff appealed.

The only questions involved in the case are of fact. There is no dispute as to the law by which the rights of the parties are to be determined, the facts being ascertained.

On the part of the plaintiff, two witnesses, (Loomis and Bierbach,) testified to the making of the contract, substantially as

Blanchard vs. McDougal.

alleged in the complainant's bill ; and two other witnesses testified to admissions of the defendant corroborative of the contract, as testified to by the other two.

We will for a moment examine the case as it is presented by the evidence for the plaintiff. This evidence shows that in September, 1855, the plaintiff was in possession of the lot in question, as a tenant of the defendant, under a lease from him; that in September, 1855, he made a parol agreement for the purchase of the premises for $3000, of which $50 was to be paid down, $450 to be paid on delivery of the deed, and the remainder in instalments, and that the plaintiff was to retain possession as a purchaser, and not as a tenant; that in February, 1857, the defendant having brought suit to recover possession of the premises, the plaintiff made a tender of $450, and a mortgage to secure the remainder of the purchase money, and demanded the execution of a deed of the premises, which was refused.

It should be remarked in the first place, that the mere payment of a portion of the purchase money, unaccompanied by any other act, is not sufficient to take the case out of the statute.

But where possession is delivered and continued, upon the payment of a considerable part of the purchase money, it will take the case out of the statute of frauds ; for the reason that it would perpetrate a fraud upon the vendee, to accept a portion of the contract price from him, induce him to remove his household goods upon the premises, or otherwise incur trouble or expense, and perhaps improve the same, and then to repudiate the contract because it was not in writing. The object of the statute was to prevent frauds and perjuries, not to encourage them. Hence the delivery of possession, in addition to the payment of a portion of the purchase money, has been held to be essential to a claim for specific performance, and for obvious reasons. In this case, however, the complainant was in possession as a tenant owing fealty to the defendant, as his landlord, and the legal presumption is, that such relation continued ; and the possession of the plaintiff in this

case is referable to the tenancy and not to the purchase.    In discussing this subject, in his work on Equity Jurisprudence, Mr. Justice Story, after showing that part payment was not sufficient to take the case out of the statute, proceeds to consider the effect of possession.  Section 763, he says: In like "manner, where possession of the land contracted for will not "be deemed a part performance, if it be obtained wrongfully "by the vendee, or if it be wholly independent of the con- "tract.  So if the vendee be a tenant in possession, under the "vendor, for his possession, is properly referable to his ten- "ancy, and not to the contract." Story Eq. Jurisp., 673, and cases there cited.

In this case testimony is produced on the part of the plaintiff to obviate this presumption of the continuance of the possession by tenancy and of fealty on the part of the tenant. The witnesses, Loomis and Bierbach, testify that in September, 1855, when the contract of purchase is alleged to have been made, that it was then agreed and understood that the plaintiff should thereafter hold possession as a purchaser and not as a tenant.  If these facts were all undisputed, perhaps the payment of the money, the termination of the tenancy, and conceding possession as a purchaser, would take the case out of the statute.

The next question which presents itself, and which is, in fact, the most important one involved in the case, is whether the contract is so clearly and unequivocally proved, established so clearly and free from doubt, as to justify a court of equity in enforcing specific performance.    Formerly, it is said, the court would make a contract for the parties, *ex aequo et bono*, out of their transactions, but such is not the rule now.    The doctrine which governs courts of equity in cases of this kind, without a dissenting opinion in recent times, is laid down in Story's Equity Jurisprudence, § 764, and the numerous cases there cited.   He says, "But in order to take a case out of the statute, upon the ground of part performance of a parol contract, it is not only indispensable that the acts should be clear and definite, and referable exclusively to the contract, but the

contract should also be established by competent proofs, to be clear, definite and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by satisfactory proof, a specific performance will not (as, indeed, upon principle it should not,) be decreed. The reason would seem obvious enough, for a court of equity ought not to act upon conjectures, and one of the most important objects of the statute was to present the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." Story's Eq. Jurisp., § 764.

Upon these principles we must ascertain and determine the right of the complainant to a specific performance of the alleged contract under the proof submitted.

We do not propose to enter into an elaborate analysis of the evidence produced at the hearing, but it will be sufficient to refer to some of its leading features. It will be remembered that this is a parol contract, outlawed by the statute, and only to be relieved by such clear and definite acts, referable exclusively to a contract showing part performance and possession, but the contract itself must be indubitably established in clear and unequivocal terms.

How nearly does the evidence in the case come up to these requirements? The witnesses, Loomis and Bierbach, say they were present at the shop of Blanchard in September, 1855, when a conversation occurred between the plaintiff and defendant, in which the plaintiff bought of the defendant the lot in dispute, for $3,000, of which sum $50 was paid down, $450 to be paid when the deed should be delivered, and the remainder in instalments. Two other witnesses testified to the admission of the defendant that he had sold the lot to the plaintiff. Another witness, Higgins, also testified that the defendant, in the latter part of 1855, told him that he supposed he had sold the lot. Loomis and Bierbach also testified that it was stated at the time of the contract, that the plaintiff was to retain possession as a purchaser, and not as a tenant as he had heretofore been. These items of evidence are here presented that they may appear in connexion with the facts proved on the part of

the defense. To make the case of the plaintiff complete, it may be again stated that he caused a tender of $450, together with a mortgage for the balance of the purchase money, to be made in February, 1855, and demanded a deed, which was refused.

On the part of the defendant it was proved that in March, 1855, the plaintiff desired Mr. Edwin Palmer to join him in the purchasing of this lot, and that conversations in relation to that object occurred from time to time up to the winter following. Palmer called, with Blanchard, about the 1st of September, on the defendant to purchase the lot, but they could not purchase it. Plaintiff never pretended to have bought the lot. Hortensius Paine testified that in the spring of 1856, the defendant and Blanchard came to the office of Paine & Sons, Attornies, when the defendant said he had brought the plaintiff in again, and that he had agreed again to leave the lot. The plaintiff said he would go out in a few days, that his family was sick, and that he was poor and not able to pay the rent, and that he would leave as soon as he could get a place to go to. Nothing was said about his buying the lot.

Another witness, Walter S. Hunn, testified that in December, 1855, or January, 1856, Blanchard said he had talked of buying the lot, but had not bought it; that Grant stood in the way. Witness was going to take the lot from plaintiff, but the deed was to come from defendant. Plaintiff was to have $300 for buying the lot for the witness.

As late as the winter of 1857, the defendant told the witness, McNeal, more than ten times, that Grant had prevented his making an excellent trade with the defendant for this lot.

And another fact appears by the testimony of Loomis, that no step was taken by the plaintiff to pursue his parol contract to a written consummation, until February, 1857, after the defendant had commenced his action to recover possession.

I am free to admit that I am unable to reconcile this conflicting evidence with the perfect truth and honesty of the parties and witnesses. If the witnesses for the defendant are to be believed, the conduct of the plaintiff is utterly inconsistent with, nay, wholly repugnant to, that of a purchaser of the

estate, in possession under purchase or contract of purchase. His frequent admission of the continued relation of landlord and tenant, long after the alleged contract of purchase, his repeated declaration that he had not made the purchase, and could not, that Grant stood in the way, and as late as 1857, that Grant prevented his making the purchase, and on the payment of only $50, alleged to be of the purchase money, in September, 1855, at the same time he was in possession as a tenant, whether owing rent or not at the time does not appear, and with such small payment upon a contract resting wholly in parol; quietly resting until February, 1857, when the defendant commenced proceedings against him as a tenant holding over—all these facts and circumstances tend to throw very great doubt over the truth of the alleged contract.

It is not proposed to enter into any consideration of the impeaching testimony. Considering it equally balanced, we find witnesses whom we would be unwilling to discredit, testifying to facts and circumstances inconsistent with each other.

As we have already said, this is not a case of preponderance of evidence. If the material fact, viz: the making of the contract, or its essential terms are left in doubt, a court of equity cannot, upon mere preponderance of evidence, decree specific performance.

I frankly confess that were this an issue at common law, and I a juror, to try upon the evidence here submitted, I should have very great doubt as to the verdict to be rendered, as to the making of the contract set out in the bill of complaint. This being the case, the evidence conflicting, unsatisfactory, and inconclusive as to the making of the contract or its terms, a specific performance cannot be ordered.

It is claimed that the admissions and conduct of the complainant may be explained on the hypothesis that he was not acquainted with the extent of his rights in equity. This may be so, but if it were so we would still be left to conjecture as to the fact of the contract and its terms. But it would seem from the extreme, if not extraordinary, caution which was used, according to the testimony of Loomis and Bierback,

to designate a new and distinctive character of the complainants possession, changing it from that of a tenant, to that of a purchaser—that the complainant was not ignorant of the principles upon which his rights would be adjudicated.

At all events we think that the testimony is so conflicting and so doubtful that we cannot order a specific performance of the alleged contract. We say "*the alleged contract*," because our doubt is, whether the contract was in truth and in fact fully made and settled upon between the parties. We do not wish to be understood as discrediting the witnesses on either side. It is easy to misunderstand, and easy to misinterpret when matters rest wholly in words. But the conduct of the parties, their actions after the alleged purchase, the one dunning for rent, the other pleading his poverty and sickness of his family in excuse for its non-payment, the one prosecuting for recovery of possession, the other craving time, speaking of sickness in his family, promising to leave when he could find another place, these actions of the parties speak in a language more indicative of the real intentions and relations of the respective parties, and of the true condition of things than any formal rehearsal of a contract could do; and yet when these transactions leave the making of the contract uncertain, and its terms doubtful, specific performance must be denied, for nothing specific is conclusively proved. The parties must be left to their remedy at law, if any they have. Such is this case, and therefore we must affirm the judgment of court below, dismissing the complainant's bill, with costs; See *Hazelton vs. Putnam*, 3 Chandler Rep. 117, and numerous cases there cited.

Judgment affirmed with costs.