RUSSELL, Appellant, vs. FISH and others, Respondents.

*March 12—April 3, 1912.*

*Equity: Action to establish title to land: Delay as a bar: Laches.*

An action to have it adjudged that plaintiff had an undivided interest in land, the title to which had been taken in defendant's name, was properly held to be barred by plaintiff's laches, it appearing, among other things, that his right to such an interest rested mainly in parol and that the burden was upon him to establish it by clear, convincing, and undoubted proof; that, though fully informed that his claim was disputed, he delayed prosecuting the same for nearly ten years; that such delay was unexplained except by a suggestion that he had been advised by counsel not to proceed until it was known whether or not defendant had realized any profit from the transaction, the property being highly speculative in character; and that in the meantime most of the persons who were concerned in the transaction had died, and the property had been transferred to others who were not clearly chargeable with knowledge sufficient to put them upon inquiry as to any claim such as the plaintiff's.

APPEAL from a judgment of the circuit court for Ashland county: E. C. HIGBEE, Judge. *Affirmed.*

In 1898 one Byron A. Simmons of Hartford, Connecticut, was the owner of 1,180 acres of hemlock timber land on Made-

line Island, Ashland county.   At this time the plaintiff was engaged in lumbering on Madeline Island.   He knew the character of the land owned by Simmons, had examined the timber and cruised it, and had had some negotiations with Simmons regarding the purchase of these lands.   He did not have the money with which to make the purchase, and in the fall of 1898, with the idea of getting assistance to secure the lands, he called the attention of one Peter Fish, who had previously acted as his agent in lumbering operations, to the lands and their condition.

Negotiations were opened by the plaintiff and Fish with a Mr. Sanborn of Ashland, Wisconsin, which resulted in an agreement that Sanborn would furnish the funds necessary to make the purchase ($2,250), should take the deed in his name as trustee, should retain a one-third interest for one third of the purchase price, and should hold the title as security for the payment of the other two thirds of the purchase price by the plaintiff and Fish, who were each to obtain a one-third interest thereby.   About the time of the commencement of the negotiations Fish paid to one W. B. Rea of Ashland, the agent for Simmons for the sale of the lands, $100 as earnest money on the purchase price.

While these negotiations were being carried on, some person, claiming to be the agent of Simmons, contracted to sell the lands to one D. W. Mowatt, and before the sale to Sanborn could be concluded Mowatt commenced an action for specific performance against Simmons.   This action was finally settled, Mowatt receiving $500 in settlement of his claim, and it was understood that the amount to be paid for a deed to Simmons was to be increased by this amount.

While the negotiations were under way between the plaintiff, Sanborn, and Fish, and while the Mowatt suit was being settled, Peter Fish brought the proposition for the purchase of the lands to the attention of his brother, John Fish, a resident of Menominee, Michigan, purposing to have John Fish

furnish the money for the purchase upon the same terms as had been agreed upon between the plaintiff, Sanborn, and Peter Fish, the cost with expenses being about $3,000, John Fish to take the title as trustee for the others and to secure the payment of the money ($2,000) he would thus advance for the plaintiff and Peter Fish.   Shortly after the proposal was presented to him, John Fish, in company with the plaintiff and Peter Fish, inspected the timber and negotiated for the purchase, the plaintiff and Peter Fish insisting upon terms such as they had had with Sanborn.   The trial court found that these terms were finally arranged between Peter and John Fish and that they were assented to by John Fish. The understanding between the parties was never reduced to writing, it was entirely oral, and neither the plaintiff nor John Fish ever subscribed any agreement or writing.

There was evidence before the court that John Fish was unwilling to go into the deal on the terms proposed; that he did not wish to enter into a partnership relation with the plaintiff; that the negotiations regarding the purchase were practically all made by John Fish with or through his brother, Peter Fish; that John Fish insisted upon making an out-and-out purchase of the property for himself; that Peter Fish and one Bates, a banker who held the title only to transfer it for Simmons, inserted the word "trustee" after John Fish's name in the deed by which the lands were conveyed to him, with the idea that John Fish would afterwards assent that Peter Fish and the plaintiff should have an interest in the land; and that John Fish, on learning that the word "trustee" had been inserted in the deed after his name, complained and objected and insisted that he had made the purchase for himself alone. The deed was prepared and executed by Bates, to whom John Fish had sent a draft for the purchase price.

It is not clear from the evidence that Peter Fish had informed the plaintiff, before the conveyance to John Fish, that John Fish had refused to make an arrangement such as had

existed between the plaintiff, Peter Fish, and Sanborn. The plaintiff learned, however, that John Fish claimed full owner-ship of the property prior to July 13, 1900, when he tendered John Fish one third of the amount paid for the lands with interest thereon from the time Fish furnished the money to make the purchase, and demanded a deed of a one-third in-terest in the lands. Fish at that time denied that the plaint-iff had any interest in the lands, and the plaintiff then brought action to enforce the alleged trust and to compel a conveyance. On October 31, 1903, this action was dismissed by the plaintiff and judgment for costs entered against him. There was evi-dence by the plaintiff that his counsel advised him not to com-mence an action until it was known what damages he had sus-tained by a sale of the timber by John Fish, and there was evidence by his counsel that plaintiff had been advised to that effect.

Nothing further was done regarding the lands or the timber until May 1, 1906, when John Fish sold the timber standing on the lands to the defendant *Wachsmuth Lumber Company* of Bayfield, Wisconsin, for $30,000. The purchaser com-menced removing the timber in the fall of 1906 and had com-pleted the work in the spring of 1909. Plaintiff was aware of the negotiations for the sale, of their consummation, and of the removal of the timber, but took no steps to protect his alleged interest or to assert his rights.

The present action was commenced on March 17, 1909, but because of the death of the defendant John Fish on March 19, 1909, the action was not begun as to the widow and children until January 17, 1910.

Peter Fish died in January, 1903; Mr. Tomkins, an attor-ney who took part in the drawing of the deed conveying the lands to Fish, in the spring of 1908; John Fish March 19, 1909; Richard B. Bates, the banker who acted for Simmons and through whom the title passed from Simmons to Fish, in May, 1910; and Simmons in July, 1910.

The trial court held that the plaintiff could not maintain this action because the alleged agreement for the purchase of an interest by the plaintiff was not evidenced as required by the statute of frauds and because of the laches of the plaintiff. This is an appeal from the judgment in accord with the above holding.

For the appellant there were briefs by *Sanborn, Lamoreux & Pray,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.*

*William F. Shea,* for the respondents.

Siebecker, J. The appellant contends that the trial court erred in dismissing plaintiff's complaint upon the ground that the plaintiff was guilty of laches in enforcing his alleged right and hence in equity was barred a recovery. No arbitrary rule exists by which stale demands may be ascertained and characterized so as to defeat an alleged claim or right; each case must rest largely upon its own facts and circumstances. Delay in asserting a right is by common consent a circumstance tending to show its want of justness, and when unreasonably extended, though unattended by other inequitable features, may create a conclusive presumption against the validity of a claim, if the delay is continued under circumstances affording opportunity for diligence. There are many phases of conduct in connection with long delays in enforcing rights which a court of equity will consider to determine whether or not a case of laches exists. Of these may be mentioned the loss of evidence occasioned by the death or departure of witnesses; the diminished probative force of evidence resulting from such delay; the change of relations to the property concerned in the litigation, by which rights of other parties may have become involved and might be adversely affected by enforcement of the claim; and the changes in the conditions of the property, such as a marked appreciation or depreciation in its value, when the right might have been enforced

before such change and without awaiting the outcome thereof before asserting or renouncing the right in accordance with the result. These considerations find universal recognition in the adjudications on the subject. *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532; *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757; *Likens v. Likens,* 136 Wis. 321, 117 N. W. 799. In the light of the well established principles, adhered to in these and other adjudications of this court, governing the question of laches, we are persuaded under the facts and circumstances of this case that the plaintiff has not shown himself properly diligent in enforcing the right upon which he now seeks a recovery against the defendants. His right to any interest in the property rested mainly in parol, and the alleged circumstances of its acquirement cast upon him the burden of establishing it by clear, convincing, and undoubted proof. This condition of his claim had peculiar force in calling on him to act promptly when he found his claim to an interest in the property was denied by John Fish, in order that he might present his claim while the circumstances of the transaction were fresh in the minds of men competent to testify thereto, and that he might thus avoid loss of such evidence through death or the destruction of its force by long lapse of time. The fact is, however, that the plaintiff, though fully informed that his claim or right was disputed, delayed prosecution for its enforcement for nearly ten years, during which time there were no obstacles to prevent him from prosecuting his claim. Nor is any reasonable explanation offered for such delay. The suggestion that he was advised by counsel not to proceed against the defendant to assert his right by legal action until it was known whether or not Fish had realized any profits from the transaction affords no excuse and tends to emphasize his inexcusable delay. It is universally recognized that the speculative character of the property involved in a transaction is an important element in determining the effect of delay in claiming a right thereto and that a higher

degree of diligence is required to avoid the charge of laches in such cases. The facts of this case are clear that the property was highly speculative in character, that this was well known to the plaintiff, and that he delayed enforcement of his alleged right for many years to await the outcome of the investment and enterprise. This is a strong feature of the case tending to show that the plaintiff was called upon to act expeditiously in enforcing any right to an interest in this property. Then again, it appears that the plaintiff's long delay has operated prejudicially to the defendants, in that John Fish and Peter Fish, as well as Mr. Simmons, the grantor of the land, his attorney, and the banker who represented him in the transfer, are all deceased. This seriously affects the inquiry into the justice of the cause. It also appears that the property has been transferred to third parties, who have been made defendants to the suit. Nor is it clear that the recorded conveyance and the external facts and circumstances of the transaction gave such implied or express knowledge to the purchaser as was sufficient to put it upon inquiry respecting such a claim. In the light of these facts and circumstances, plaintiff's want of diligence in enforcing his alleged right is clearly shown and the court properly held him to be barred by his laches from now enforcing such a right, and properly awarded judgment dismissing the complaint.

This result renders it unnecessary to consider any of the other questions presented in the briefs of counsel.

*By the Court.*—Judgment affirmed.