FONTAINE, Respondent, vs. RILEY and others, Appellants.

*January 15—February 9, 1926.*

*Specific performance: Oral contract to convey land: Degree of proof required: Certainty as to description: Land to be surveyed: Evidence: Sufficiency: Hunting over tract: Innocent purchaser of part of lands.*

1. In an action for the specific performance of an oral contract for the purchase of land, all of the essential terms of the contract must be proved by clear, satisfactory, and convincing evidence. A mere preponderance of the evidence will not suffice; and whether the required degree of proof has been furnished must be determined from the testimony and all the surrounding facts and circumstances. p. 232.

2. Such a contract requires not only a reasonably accurate description of the land in order that specific performance may be decreed, but the other essential terms must be shown by clear, satisfactory, and convincing evidence. p. 235.

3. The fact that both parties deemed a survey of the land necessary indicates strongly that the area involved was not sufficiently definite to form the basis of an oral contract of sale which could be specifically enforced. p. 236.

4. Where plaintiff claimed that the tract in question was twenty acres in extent and defendant contended it was only seven, the essential terms of the contract were not established by clear, satisfactory, and convincing evidence, especially in view of the fact that both parties deemed a survey necessary to determine the area involved. pp. 236, 237.

5. Specific performance of such a contract would not be enforced where it appeared that other defendants impleaded were innocent purchasers of part of the tract alleged to be covered by the oral contract. p. 237.

6. One who, under the evidence, had no knowledge of the contract sought to be enforced and whose deed was executed and recorded before plaintiff filed his *lis pendens,* was an innocent purchaser. p. 237.

7. Where defendant contended that only a seven-acre tract was sold, evidence that plaintiff had hunted over the entire tract, had improved a woods path, and about the time of another purchaser's appearance had done some work towards the construction of a hunting lodge, is *held* insufficient to warrant a finding that a subsequent purchaser of land other than the seven-acre tract took with notice of plaintiff's claims, especially where all of plaintiff's visible work had been done on the seven-acre tract. p. 238.

APPEAL from a judgment of the circuit court for Door county: W. B. QUINLAN, Judge. *Reversed.*

This is an appeal by the defendants from a judgment decreeing specific performance of an oral contract for the sale of land.

In 1920 the plaintiff purchased forty acres of land on Mission Bay, in Door county, Wisconsin, for the sum of $40 per acre, and during the following year constructed a summer home thereon. To the west of plaintiff's land the defendants *James Riley* and his sister *Mary* owned a large tract of land which also had a water frontage on the bay. The twenty acres of the *Riley* land located immediately west of plaintiff's land consisted principally of a swamp, and in its condition in 1920 was unsuitable for residence purposes. On the twenty acres alluded to there still remained a small number of virgin pine trees, and the balance of such acreage was covered with a variety of growing trees and brush of comparatively little or no value.

In September, 1920, the plaintiff and one Van Dyke, a real-estate dealer, were present upon plaintiff's land while the same was being surveyed by a surveyor, and the defendant *James Riley,* who with his sister owned the land west of plaintiff's tract, being interested in the survey, was present while the lines were fixed by the surveyor. It was suggested by the plaintiff at that time that his son, who had just grown to manhood, was very much interested in duck hunting, and that a certain point on the bay a short distance from plaintiff's land would make a desirable place for the erection of a hunting lodge to facilitate the pursuit of the sport of duck hunting. Plaintiff was not a hunter, but both Van Dyke and *Riley* were experienced sportsmen in that line, and in order to secure the advice of an expert as to the amount of land which plaintiff would need for the purpose indicated in order to properly protect the point, he requested the advice of Van Dyke, and the latter then proceeded along the shore a distance west, covering a space of about 500 feet,

according to his estimate, from the point, and the land thus traversed, up to the south line of the *Riley* holding, was indicated by Van Dyke as of sufficient area to serve the desired purpose.  Both the plaintiff and *Riley* followed Van Dyke to the end of his route, which the plaintiff claimed was at the location of several logs near the shore, and here the three parties, according to the testimony of the plaintiff and Van Dyke, further discussed the proposed purchase. Plaintiff and Van Dyke testified that *Riley* suggested the purchase of a strip extending back from the shore a distance of about 200 feet, in order that *Riley* might reserve to himself the benefit of the timber standing upon the balance. No conclusion, however, was reached upon that day, and the parties dispersed with the understanding that they would meet again, and in the meantime *Riley* would discuss the matter with his sister.

*Riley* denied that the westerly point of the land included in the proposed purchase was where Van Dyke claimed he had fixed it, but took the position that the point was fixed at a certain birch tree standing near the shore, and that this point was indicated by a blaze which he cut on the tree, and that the proposed area included not twenty acres but about seven acres.

A few days thereafter the plaintiff and Van Dyke went to the *Riley* home and there met both *James Riley* and his sister.  Plaintiff and his expert, Van Dyke, both testified that the *Rileys* expressed an unwillingness to sell a tract extending back from the shore a distance of 200 feet, but that they were willing to sell the entire tract up to the lot line; that *Riley* had paced off the proposed purchase and that it included about twenty acres, and that he would be willing to make it twenty acres; that the *Rileys* would sell such tract at the same price per acre as the plaintiff paid for his summer-home tract, and that they would accept $800 for the land.

This testimony was contradicted by both the *Rileys,* they claiming that nothing was said about a twenty-acre tract or that they would be willing to sell the land at a price of $40 per acre. They admitted, however, that the price fixed was $800, but contended that the land proposed to be included in the sale extended to the blaze upon the birch tree, and that the proposed sale was not based upon any particular acreage, but was limited to an indefinite strip included within the territory up to the blaze.

On a subsequent trip to the *Rileys'* home the plaintiff paid *Riley* $500 in cash, and the plaintiff testified that *Riley* assumed to secure a surveyor so that the land purchased might be described, and that upon the completion of such survey and the execution and delivery of the deed plaintiff would pay the *Rileys* the balance of the purchase price. Plaintiff also testified that *Riley* inquired from him whether the services of plaintiff's surveyor might be procured, and that he, the plaintiff, attempted to procure such services, but failed in his effort. He also testified that *Riley* agreed to procure the services of a surveyor by the name of Schauer. It appears that *Riley* actually did confer with Schauer, but that he was unable to procure him. On the other hand, *Riley* testified that the plaintiff agreed to procure the services of a surveyor, and that he waited patiently until the summer of 1922 for the plaintiff to fulfil his agreement, but that no surveyor was actually secured until a part of this twenty-acre strip was sold to the defendants *Knudsen* and wife.

Plaintiff testified that immediately after he paid the $500 down he took possession of the twenty acres, such possession being evidenced by plaintiff's son using the tract in question for hunting purposes. He also claims that on the advice of *Riley* he constructed a drain on the line dividing his residence property and the twenty acres. The defendants' witnesses testified that the drain was constructed a little to the

east of the division line.   Plaintiff also testified that before he had any dispute with *Riley,* in the summer of 1922, he started cutting poles and collecting stone for the building of his hunting cabin, and that the work was done by an employee with the aid of a team of horses, and that the performance thereof occupied a period of about two days.   All of this evidence is contradicted by both *Riley* and his sister.

To further show that the plaintiff had actually taken possession of the twenty acres, he testified that a certain way or path through this tract was cleared by him, and that the work in connection therewith consisted principally in removing brush and other obstructions along this path. Both *Riley* and his sister denied that any work had been done or that the path showed any evidences of an attempt to clear it.

*Knudsen* and wife were not made parties defendant originally, and the case proceeded to the close of the evidence, when the trial judge announced that specific performance could not be decreed against the *Rileys* for the reason that the *Rileys* had, prior to the time of the commencement of the action herein and the filing of the *lis pendens,* conveyed about thirteen acres of this twenty-acre tract to the defendants *Knudsen,* and that the deed conveying such tract was recorded prior to the filing of the *lis pendens.   Knudsen* and wife were thereupon impleaded, and upon the taking of *Knudsen's* deposition the court filed its findings of fact and conclusions of law, in which it ordered specific performance.

*Knudsen* testified that on or about the 9th day of August, 1922, after having heard that *Riley* was anxious to sell a part of his land, he approached him upon the subject, whereupon the matter was discussed, and on the 16th day of August an option for the purchase of twenty acres was executed and delivered to him.   The proposed tract was situated directly to the west of the seven acres which *Riley* claims were included in plaintiff's purchase.   It was then

agreed between *Knudsen* and *Riley* that the latter would have the land surveyed, and that he would thereupon execute a proper deed in the premises.

The twenty acres purchased by *Knudsen* was viewed by him and a man by the name of Nelson and the surveyor who surveyed the tract, and they testified that at that time they did not observe that any work had been done on the land; that there was no evidence of any poles having been cut or stones collected for the building of the hunting lodge; that the pathway had not been cleared, and that it did not show any evidence of work having been performed thereon. They also testified that *Riley* showed them the blaze upon the birch tree which he claimed was the westerly line of the plaintiff's purchase; that neither *Knudsen* nor his nephew, Nelson, nor the surveyor had any knowledge whatsoever imparted to them that the plaintiff claimed to have purchased the east twenty acres of the *Rileys'* land, and that they were not aware of any facts whatsoever which would have a tendency to place them upon inquiry. The consummation of the deal between the *Knudsens* and the *Rileys* was left with Attorney Wagener of Sturgeon Bay, and the purchase price was paid and the deed delivered. In other words, the *Knudsens* claim that they are innocent purchasers for value of the tract conveyed to them.

The court found that an oral agreement was entered into between the plaintiff and the *Rileys* for the purchase of the east twenty acres of the *Riley* tract; that possession of this tract was delivered to the plaintiff, and that it was used for hunting purposes from that time on; that it was agreed that *Riley* was to have the land surveyed, and that he would then execute a deed and the plaintiff then pay the balance of the purchase price; that, in addition to giving the plaintiff possession of the land, plaintiff made valuable improvements upon this tract, which consisted in the digging of the drain above referred to and the cutting of the poles and the collec-

tion of the stone for the hunting lodge, and in the clearance of the path running through this tract. The court also found that the *Knudsens* were not innocent purchasers, and that there were sufficient facts in existence at the time they made their purchase to put them upon inquiry. Thereupon it ordered specific performance as against all of the defendants, and, judgment having been entered pursuant thereto, the defendants herein have prosecuted this appeal.

Further facts will be referred to in the opinion.

For the appellants there was a brief by *W. E. Wagener* of Sturgeon Bay, and oral argument by *Mr. Wagener* and *Mr. Arthur T. Holmes* of La Crosse.

For the respondent there was a brief by *Silverwood & Fontaine* of Green Bay, and oral argument by *T. P. Silverwood*.

DOERFLER, J.   Sec. 2304 of the Statutes for the year 1923 reads as follows:

"Every contract . . . for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom . . . the sale is to be made or by his lawfully authorized agent."

Sec. 2305 reads as follows:

"Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements."

Where an oral contract for the purchase of real estate is relied upon in an action for specific performance, all of the essential terms of the contract must be proven by clear, satisfactory, and convincing evidence. A mere preponderance of the evidence will not suffice. Whether the degree of proof under the rule thus stated has been furnished must be determined from the testimony of the witnesses and all the sur-

rounding facts and circumstances. The land in question was wild swamp land, bounded on the north by the bay, and was covered with trees and brush. Prior to the alleged purchase of the plaintiff and up to the time of the *Knudsen* purchase, no part of the land had been cultivated or improved (except as hereinafter indicated); no fences or other evidences of demarcation had been placed thereon, and no use thereof had been made, unless it be by the cutting of some timber or the acts of sportsmen in the pursuit of game. The title to this land had been in the *Riley* family for a long period, and, being undesirable for agricultural or residence purposes, but few sales had been made prior to 1922.

In 1920 the plaintiff purchased forty acres to the east of and adjoining the *Riley* tract from a third party, and thereon built and established a summer home, and it appears that he was induced to make this purchase by reason of the sandy shore along this tract, which made it desirable for bathing purposes. Along the shore of the bay, and to the west of plaintiff's tract, is located a point which extends out into the bay, and the plaintiff was desirous of purchasing an additional tract of land which would include this point, and which would extend a sufficient distance westerly to protect it for the shooting of wild ducks. Plaintiff and the *Rileys* had been on friendly terms for many years, and this friendship evidently furnishes the reason why the contract in question was not reduced to writing and made definite. Each of the parties had implicit faith in the other, and the parties evidently considered their word as binding as a bond. Both the plaintiff and the *Rileys* appeared before the court apparently ready and willing to carry out an oral agreement, but unfortunately they disagree upon the vital and essential terms of the contract, the plaintiff claiming that he purchased the east twenty acres of the *Riley* tract, the defendants *Riley* claiming that the purchase included only about seven acres.

That there should be so glaring a discrepancy in the area cannot readily be explained. It does seem quite plausible that the plaintiff desired a tract of land sufficiently large to insure the protection of the point so it might be used for hunting purposes. The contention of the plaintiff that the proposed tract was to consist of the east twenty acres of the *Riley* land is strongly supported by the testimony of the plaintiff and his witness that it was understood that the plaintiff would pay per acre the identical amount which he paid for the tract purchased by him on which his residence is situated, and this tract consisted of forty acres and was purchased at the price of $40 per acre. If we assume that the plaintiff actually purchased twenty acres, then the agreed price of $800 would account satisfactorily for the purchase price. But right here an irreconcilable conflict between the parties appears. In accordance with the plaintiff's version, it was understood that the westerly line on the shore of the bay was marked by several logs there situated, and that this point was selected by Van Dyke, the expert sportsman, as affording ample protection to the point. In fact Van Dyke and the plaintiff testified that the former paced a distance of about 500 feet to the west of the point, and that when he arrived at the junction of the two logs he indicated a distance sufficiently far to the west that would protect the point. On the other hand, there is testimony in the case that the area so indicated would not include twenty acres but merely thirteen acres. This raises a considerable doubt in the mind of the court of the correctness of plaintiff's contention. Both of the *Rileys* testified that the tract was not sold by the acre, but that a definite strip was outlined, and that the westerly point was fixed by *Riley* in cutting a blaze upon a birch tree, which would give the plaintiff an area a trifle in excess of seven acres.

Plaintiff's counsel argue that while it was first agreed that the contract should include about twenty acres, it was thereafter, and before the payment of the purchase money,

modified so as to include definitely the east twenty acres of the *Riley* tract. If plaintiff's version be correct, it is difficult to perceive why a survey of the tract was a necessary precedent to the conveyance of the land. By describing the land as the east twenty acres, we have as definite a description as any surveyor can furnish.

However, a contract of this kind requires not only a reasonably accurate description in order that specific performance may be decreed, but the other essential terms of the contract must also be shown by clear, satisfactory, and convincing evidence. The plaintiff asserts that the agreement provided that a conveyance was to be executed after the making of a proper survey. The *Rileys* admit this, but they insist that the survey was to be made by the plaintiff, while the plaintiff urges that it was to be made by the *Rileys*. Assuming that it was difficult to make a survey in the spring of the year by reason of the presence of water on the land; that in the summer it was nigh impossible owing to mosquitoes, and that a survey was limited to the fall of the year, two full years had elapsed before any survey was made, and it was then made only at the time when the defendants *Knudsen* had made their purchase. No anxiety was manifested by either of the parties to have this land surveyed. The matter was permitted to drag on for two years, and during all this time each was left under the impression that his particular version as to the area involved in the sale was correct. Had the subject of a survey during the period of this protracted delay been seriously discussed by the parties, it is reasonably presumable that the inconsistent and irreconcilable claims of the parties would have been revealed long before the summer of 1922. Delays of this kind, in an oral contract, invariably enhance the difficulties involved in the proper construction thereof. Either party had a right to have a survey made, where the other either refused to comply with the contract or was the cause of the delay for an unreasonable length of time. Such delay

is persuasive to a degree that the making of the survey was not a condition precedent to the conveyance of the land and the payment by the plaintiff of the balance on the contract. The record does not reveal that a survey of the twenty acres claimed by the plaintiff has ever been made, and the plaintiff has seen fit to commence his action for specific performance independently of a survey, and in so doing assumes a position rather inconsistent with his testimony in which he asserts his rights to a survey as a condition precedent. This merely has a tendency to prove what has heretofore been said in this opinion, that if plaintiff by the oral agreement purchased the east twenty acres of the *Riley* tract, no survey was necessary to ascertain the description, and that a deed could have been procured which would have conveyed the proper area at the time of making the oral contract. That a survey was deemed necessary by both parties to the contract indicates strongly that the area involved was not sufficiently definite to form the basis of an oral contract which could be enforced by specific performance.

In *Blanchard v. McDougal,* 6 Wis. 167, it is said in relation to the establishment of an oral contract like the one involved in the instant case: "If the material facts, namely, the making of the contract, or its essential terms, are left in doubt, a court of equity cannot, upon mere preponderance of evidence, decree specific performance." In that case it was also held that in an oral contract, in order that it may be enforceable, the essential terms thereof must be established by clear, definite, unambiguous, and unequivocal testimony. That is also the holding, substantially, of this court in the following cases cited in the brief of counsel for the defendants: *Knoll v. Harvey,* 19 Wis. 99; *Hibbert v. Mackinnon,* 79 Wis. 673, 49 N. W. 21; *Dewey v. Spring Valley L. Co.* 98 Wis. 83, 73 N. W. 565; *Russell v. Fish,* 149 Wis. 122, 135 N. W. 531; and *Wege v. Boehm,* 184 Wis. 215, 199 N. W. 210. See, also, 25 Ruling Case Law, 218, 219.

We therefore conclude that the essential terms of the contract were not established by clear, satisfactory, and convincing evidence, and that the contract is not free from ambiguity or doubt. In arriving at this conclusion, the rule established by this court that great weight must be given to the conclusions arrived at by the trial court has not been overlooked. The trial court has facilities for judging of the credibility of the witnesses which are denied this court; it meets the witnesses face to face, and can form an opinion to some extent of the witnesses' credibility from their appearance and demeanor upon the stand and from the manner in which they testify. But there are certain outstanding physical and other facts which are disclosed by the cold record which raise in our minds serious and abiding doubts, which stand as an unsurmountable obstruction to the granting of the relief prayed for.

But, assuming that the oral contract had been established, under the rule applicable to cases of this kind we would have no hesitancy in refusing to enforce specific performance, because it is clear that the *Knudsens* are innocent purchasers, and that they did not have knowledge of plaintiff's alleged contract or of facts which in law would put them on inquiry to ascertain the extent of plaintiff's alleged purchase. First, it is undisputed that *Knudsen's* deed was executed and recorded before plaintiff filed his *lis pendens;* and second, that he paid a valuable consideration for the land purchased by him and that he went into actual possession thereof. These circumstances require weighty and convincing evidence before we can deprive a party situated like the *Knudsens* of their property. All of the witnesses for the defendants testified that *Knudsen,* prior to the time he obtained his option, made an examination of the land; that *Riley* admitted that he had sold a parcel of land to the plaintiff, and he indicated the extent of such purchase by a blaze made by him on a birch tree which he exhibited to defendants' witnesses. These witnesses also testified that at the

time when the option was given there were no trees or poles cut or stones assembled for the construction of the hunting lodge; that the path which the plaintiff claims he cleared showed no evidence of such clearing; that while a drain was constructed by the plaintiff, it was located just east of the dividing line between his property and that of the *Riley* tract; and that the *Knudsens* had no knowledge whatsoever of any possession of the plaintiff's alleged twenty-acre tract having been delivered to the plaintiff, or that use had been made of such tract by plaintiff's son for hunting purposes.

These considerations are vital in determining any claim of the plaintiff as to the *Knudsens*. But over and above all, the fact that the alleged collection of material for a hunting lodge was located on the seven-acre tract is strongly significant. Furthermore, it is undisputed that whatever work was done toward the erection and construction of this lodge was performed at or about the time when *Knudsen* appeared upon the scene, and this is evidence, if at all, that the possession was a scrambling or litigious possession, and not one which the court would recognize as of great weight in an action for specific performance like the one before us. 36 Cyc. 666.

A path through wild lands covered with timber constitutes a fact of little probative force to prove claim of possession. Such paths or roads are common throughout the entire Northern country, and indicate merely that at some time or other they were used for logging roads during timber-cutting seasons, or for a convenient path upon which lovers of nature and sportsmen are accustomed to travel. It also strikes us that the claim of the plaintiff that he had performed work on this path is not in accordance with even the preponderance of the evidence.

The occasional use of the alleged twenty acres claimed to have been purchased by the plaintiff under the oral contract, for hunting purposes, is of little or no significance or weight on the subject of possession, and would afford no basis for

Park Falls L. Co. v. American A. Co. 189 Wis. 239.

holding that *Knudsen* had knowledge of plaintiff's alleged possession, even if we assume (which assumption is unwarranted by the evidence) that he had seen plaintiff or his son hunting upon this strip.

We therefore conclude that the *Knudsens* are innocent purchasers for value; that they paid a valuable consideration; that they went into possession of their property purchased; and that the evidence does not disclose such facts as are required under the law to place a purchaser on inquiry.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.