ROYSTON and others, Respondents, vs. FROST and others, Appellants.

*January 6—April 1, 1930.*

242

For the appellants there was a brief by *Walden & Conway* of Madison, and oral argument by *E. J. Walden.*

For the respondents there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Roman Heilman.*

The following opinion was filed February 4, 1930:

OWEN, J. In order to entitle the plaintiffs or any of them to obtain the relief demanded, it is incumbent upon them to establish a parol agreement on the part of Mrs. Cranefield

to grant an easement for the purposes of a right of way over and across lot 13 which she then owned, and the essential terms of such an agreement must be established by clear, satisfactory, and convincing evidence. *Fontaine v. Riley,* 189 Wis. 226; 207 N. W. 256. The record clearly discloses that the interest of Schlimgen required that the public alley be discontinued, but that the continued existence of a right of way along the line of the public alley was also of great importance to him. With a view of accomplishing the discontinuance of the public alley and also of preserving its existence for a right of way, he opened negotiations with the Cranefields. He told them if it remained a public alley the city could order expensive improvements therein, thus placing a burden upon all of the property owners, whereas if it were a private alley or right of way he would be willing to maintain the alley at his own expense. It is apparent that some sort of an agreement was reached whereby the Cranefields co-operated in procuring the discontinuance of the public alley and whereby they extended to Schlimgen and other owners abutting on the alley the right of passage over lot 13. But the serious question in the case is whether they agreed to grant an easement of a right of way or whether they simply agreed to permit its use for that purpose.

The testimony of Mr. Schlimgen with reference to this agreement is very general and wholly lacking with reference to details and specific terms of the agreement. The testimony of A. T. Rogers, secretary of the Madison Realty Company, is that he dictated an agreement to be signed by property owners establishing a private alley, but his testimony is wholly lacking concerning the terms or character of this agreement. There is testimony of Mr. Rogers' secretary that she transcribed such an agreement, but she failed to remember any of the terms of the agreement and was unable to give any testimony concerning its character further than that it provided for the establishment of a private right

of way. This agreement was never signed by the parties and was not introduced in evidence, if, as a matter of fact, such an unsigned agreement would have been competent for any purpose if it had been produced. The only one testifying who seems to have any recollection concerning the agreement is Frederick Cranefield. He testified that Mr. Schlimgen approached him with reference to the matter, suggesting that the continuance of the public alley might subject the abutting property owners to burdensome assessments for the improvement of the public alley, and that if it could be converted into a private alley he, Schlimgen, would keep it in proper repair at his own expense. He testified that he was not averse to avoiding the burdens of special assessments and that he was willing to give Mr. Schlimgen a right of way over said lot 13. His testimony leaves the important question of whether such right of way was to take the character of an easement or a mere license in the greatest doubt. He positively denied that he agreed to permit a private right of way over his property for an indefinite period, and that he knew that his wife never agreed that the former public alley should be maintained as a private alley for an indefinite period. He testified that he knew that it was necessary for the success of Mr. Schlimgen's business that an alleyway be maintained along the line of the public alley, and that it was his intention to permit Mr. Schlimgen to use the alley as long as he was in business. The strongest construction that can be placed upon Mr. Cranefield's testimony to support the plaintiffs' claim is, that it was orally agreed by Mrs. Cranefield that the public alley should be used as a private alley for the benefit of all the abutting owners in lieu of the public alley, but not for an indefinite period, not for all time. Just how this private alley was to be established, whether by the grant of an easement or by a mere license, does not appear.

The term "private alley" does not have such a well-defined meaning in the law that it can be held that its establishment

can rest upon nothing but the grant of an easement. It may as well rest upon a mere license if those interested in its maintenance repose mutual confidence in the good faith of those with whom they are dealing. The use which was made of this alley by owners of property in that block, including Mr. Schlimgen, is not at all inconsistent with the theory that the right to so use it rested upon a mere license. That it did so rest upon a mere license finds confirmation in the fact that none of the other property owners in the block ever conveyed an easement for the purposes of a right of way over their premises. Schlimgen never executed such a conveyance. The Madison Realty Company never executed such a conveyance. Neither did any of the property owners who were grantees of the Madison Realty Company. Furthermore, it is doubtful whether there ever was any discussion of the matter between any of the property owners except Schlimgen and Cranefield. Mr. Rogers thinks he discussed the matter with Mr. Cranefield. Mr. Cranefield says he never discussed the matter with Mr. Rogers or any one else except Mr. Schlimgen. The fact that no written agreement establishing this alley was ever executed, and that none of the parties ever conveyed an easement to any of the others, is not without its significance. This circumstance certainly cannot be regarded as corroboration of the contention that an easement was within the contemplation of the parties. The fact that such a written agreement was prepared but never executed rather negatives the idea. If Mr. Schlimgen now finds himself in a position where he is unable to establish his right to the easement over lot 13, it is a penalty to which his own laches in no small degree has contributed. If mutual grants were within the contemplation of the parties, he, being the one most greatly interested, should have promptly executed the grant on his part and obtained it from the others. His indifference in the matter for a period of fourteen years has given rise to difficulties which seem insurmountable.

Our conclusion is that an agreement on the part of the Cranefields to convey an easement for a right of way over lot 13 has not been established by clear, satisfactory, and convincing evidence. The use of the way over this lot by the property owners in block 6 has been by virtue of a license, which was terminated by a conveyance of the property to the defendant Frost. *Bruley v. Garvin,* 105 Wis. 625, 81 N. W. 1038; *Fryer v. Warne,* 29 Wis. 511. The prayer of the complaint should have been denied and the prayer of the defendants' counterclaim should have been granted.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment dismissing plaintiffs' complaint and to grant the relief prayed for in defendants' counterclaim.

STEVENS, J., took no part.

A motion for a rehearing was denied, with $25 costs, on April 1, 1930.