ESTATE OF POWELL : WILCOX and wife, Respondents, vs. COUMBE, Executor, and others, Appellants.

*December 9, 1931—January 12, 1932.*

514

For the appellants there was a brief by *O. D. Black* of Richland Center, attorney, and *Kopp & Brunckhorst* of Platteville of counsel, and oral argument by *Mr. Arthur W. Kopp* and *Mr. Black*.

*L. H. Bancroft* of Milwaukee, for the respondents.

FOWLER, J. The questions arising upon the appeal may be considered under three heads: (1) Whether the county court has jurisdiction to decree specific performance of a contract of a deceased person to transfer real estate. (2) Whether the evidence supports the finding that an oral agreement to transfer was made by the deceased. (3) Whether the acts of the respondents constitute such execution of the oral contract on their part as to warrant a decree for specific performance.

(1) Sec. 296.02, Stats., gives concurrent power to the circuit and county courts to compel specific performance of contracts made by deceased persons. Sec. 296.04 provides that whenever any person who is bound to convey any real estate shall die before making the conveyance, either such court may upon action by the person entitled to the conveyance require the personal representative of the deceased person to convey the real estate in like manner as the deceased "might or ought to have done if living." These provisions leave no doubt of the jurisdiction of the county court to decree specific performance when the contract of the deceased person was to "convey." If the contract had been to convey by deed, there could be no question of the jurisdiction of the county court to enter the decree appealed from. The understanding of the respondents was that the deceased would execute a will rather than a deed. Execution of either a will or deed by the deceased would have constituted performance of his obligation. The contract having been made, it was the duty of the deceased to do one or the other. He "might have done" either. He "ought to have done" one or the other. We consider that under the terms of sec. 296.04, although it is indefinite which the deceased should do, inasmuch as it appears he should have done one or the other, the county court had jurisdiction and it was appropriate to decree a conveyance by the executor. It has been held that specific performance lies to enforce an agreement to devise real estate in *Brown*

*v. Webster,* 90 Neb. 591, 134 N. W. 185; *Woods v. Dunn,* 81 Oreg. 457, 159 Pac. 1158; *McGinley's Estate,* 257 Pa. St. 478, 101 Atl. 807. We see no good reason to refuse specific performance merely because the agreement is to transfer by will instead of deed or because the agreement does not specify in which manner the transfer shall be executed. That our statute of frauds does not bar the relief appears from sec. 240.09, which specifically declares that "nothing in this chapter [containing the statute of frauds] contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements." In such cases as have heretofore been before the court wherein oral agreements to devise were involved, the court has granted the relief of awarding payment for the services performed pursuant to the agreement, except in the case of *Dilger v. Estate of McQuade,* 158 Wis. 328, 148 N. W. 1085, wherein the relief granted was practically specific performance, although the judgment was for a specific amount equal to the full value of the estate agreed to be left to the claimant instead of a decree requiring the personal representative to convey. Had specific performance been prayed for in the *Dilger Case* it might as reasonably have been granted as the money judgment, and it does not appear that it would not have been decreed. Appellants' counsel do not object to the relief granted by the trial court on the precise ground that a contract to devise land cannot be specifically enforced, and we might perhaps infer therefrom that they concede that it can be in a proper case.

(2) It is well established that specific performance of a contract will not be decreed unless it is established by clear, satisfactory, and convincing proof. *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 217 N. W. 416; *Royston v. Frost,* 201 Wis. 240, 229 N. W. 71; *Blanchard v. Mc-*

*Dougal,* 6 Wis. 167. Other Wisconsin cases to the same effect might be cited. We recognize the rule. But it is also a well established rule that the finding of a trial court will not be overthrown on appeal unless it is contrary to the clear preponderance of the evidence. *Rodman v. Rodman,* 112 Wis. 378, 383, 88 N. W. 218. In the *Rodman Case* the trial court found that the contract to devise was not made, but the rule as to the effect of the court's finding applies as strongly when the court finds in favor of the making of the contract as when it finds against it. If the rule be a poor one, it would be poorer if it did not work both ways. The trial judge stated that he was "fully convinced there was an oral contract existing between the parties whereby it was understood and agreed that the said John C. Powell would convey to plaintiff (Lottie) either by deed or last will" his farm. Giving to the rule last stated the force which is its due, we cannot say that his conclusion is not sustained by the evidence. No useful purpose would be served by detailing minutely the evidence on which the trial court's finding was based. The main facts may be classified under four heads: (a) Circumstances showing the contract a reasonable one and one that the deceased would be likely to make. (b) Circumstances tending to show that such a contract was made. (c) Testimony of disinterested responsible persons that the deceased stated to them in effect that the farm was to go to the respondent Lottie. (d) Testimony of the respondents tending to prove that the deceased made such a contract.

(a) The respondent Lottie was an orphan, the child of a sister of the deceased, whom he took into his home on her mother's death when she was two years old and reared as his own child. The deceased was childless, except for a demented son, and regarded Lottie as his own daughter. The wife of the deceased was not well and Lottie performed

services in the home as great as any daughter could, and in one respect at least greater than any daughter would be expected to perform, in watching after and attending to the personal cleanliness of the son, who at times was a mere infant as to control of his bodily functions even after he grew to manhood. The wife of the deceased died when Lottie was eighteen years of age. For three years after the wife's death and until the son died, Lottie remained in the home of the plaintiff, managing the household, doing the housework, and watching and attending to the personal wants of the son. The respondent George Wilcox was a cheesemaker employed at the local cheese factory. He married Lottie shortly after Mrs. Powell's death, and as Lottie would not leave her uncle and the son, he lived with her on the farm. After the son's death he rented on shares and moved to a large highly improved, well-stocked, and well-kept farm. After one year on this farm he moved back to the Powell farm, then being rented to a tenant.

(b) The respondents moved back to the Powell farm at the solicitation of Powell and continued in possession thereof until Powell's death nearly twenty years thereafter. The Powell farm was ill-kept and run down; the buildings were dilapidated, except the barn which was unfinished; it was not nearly so attractive or remunerative as a renting proposition as the farm the Wilcoxes left. Powell lived at a small hamlet a half mile from the farm, but a room was always kept ready for his use in the house on the farm. Mrs. Wilcox did his washing mostly and looked after him in a general way until his marriage eight or nine years before his death. From the time they went on the Powell farm the Wilcoxes worked and managed it as they would a farm of their own. Wilcox cleaned it and kept it clean of quack grass and Canada thistles; cleaned out fence rows; built new fences; repaired the house and kept it in repair; helped finish a barn in process of construction; built a hog

pen, hen house, and other outbuildings; tore down and removed dilapidated outbuildings; did work on a silo; made a driveway; wired outbuildings for electric lights; grubbed out an old and set out a new orchard and small fruit; bred the scrub cattle into a fifteen-sixteenths and better blooded Guernsey herd; kept pure-bred China hogs,—all beyond the work and conduct of a tenant and without being paid for the extra work or reimbursed his expenditures. Powell paid for most of the material that went into the improvements and did some work upon them, but the evidence tends to show the aggregate value of Wilcox's work and material not paid for or reimbursed amounted to upwards of $4,000. The receipts of the farm were divided equally between Powell and Wilcox, without any strict or regular accounting. Powell's income from it was far beyond what would be realized from renting on shares to an ordinary tenant, as Wilcox was an excellent farmer.

(c) Four disinterested and apparently highly·responsible and trustworthy persons testified that Powell had told them that "Lottie and George would have the farm some day and might want timber on the farm (which witness wished to buy) to build a house with." "Wilcox was not an ordinary renter; Lottie was to him as a daughter, nearest and dearest to him of any one on earth; the farm will go to her some day." "The place is going to be Lottie's and whatever sized silo they (the Wilcoxes) want I will have to build." The witness would have "to see George and Lottie about a lighting plant at the farm because the farm went to Lottie when Powell was through with it. When Powell was through with the farm it went to Lottie." Others testified to statements made by Powell after his marriage, when the new wife was suspicious of and hostile to the Wilcoxes, to the general effect that the Wilcoxes had no claim to the farm. These were self-serving statements not receivable in evidence. *Will of Klehr,* 147 Wis. 653, 133 N. W. 1105.

The former statements were declarations against interest, and it is on that ground that they are received. Such statements are admissions as distinguished from mere self-serving statements.

(d) The Wilcoxes testified that an agreement was entered into between Powell and them before they moved onto the farm; the agreement was not a lease; the Wilcoxes were to move on and fix up the place as their own; they went onto the place solely because of the agreement made; Lottie was to have the place; they expected Powell to will the farm to her.

The trial judge might properly find the evidentiary facts as above stated, and we consider that their cumulative force warranted the inference of ultimate fact that a contract to transfer the farm was made.

While in some of the cases that have reached this court wherein the trial court found that a contract to transfer was not made, the statement of facts contained in the opinion would seem as strong in support of a contrary conclusion as are the facts here, in several of them, particularly the *Dilger Case, supra,* wherein an agreement to transfer was held properly inferable, it would appear from the opinion that the evidence was not nearly as strong in support of such inference as it is here.

(3) It is urged that there was no such partial performance by the respondents as to warrant specific enforcement of the contract because the proof does not show that the respondents entered upon the land as and solely as a result of the contract. That the entry must so result is held in *Bowen v. Warner,* 1 Pin. 600, and many other later cases. But there is testimony of the respondents themselves to the precise point that they did so enter, and the circumstances indicate that they would not have gone upon the farm as mere tenants and that they did not so enter. It is urged that possession alone and that services alone do not constitute sufficient performance. While it may be that no one

act or no one class of acts of the respondents would alone have, constituted sufficient partial performance to warrant specific enforcement, their acts in the aggregate throughout the twenty years that were beyond the requirements of ordinary tenancy and husbandry were such that to deny them specific enforcement would operate as a fraud upon them, and the prevention of fraud is the basis of and reason for the equitable relief of specific performance. Story, Eq. Jur. (14th ed.) § 1047; Pomeroy, Eq. Jur. § 921; *Cutler v. Babcock,* 81 Wis. 195, 51 N. W. 420; *Papenthien v. Coerper,* 184 Wis. 156, 198 N. W. 391; *Doyle v. Fischer,* 183 Wis. 599, 198 N. W. 763. What constitutes sufficient part performance of oral contracts to warrant a decree of specific performance is well summarized in an opinion by Mr. Justice ROSENBERRY in *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 210 *et seq.,* 217 N. W. 416. We consider that granting the remedy under all the facts in the instant case does not violate the rules there stated.

*By the Court.*—The judgment of the county court is affirmed.